**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | (Chapter 11) |
| | § | Jointly Administered Under |
| DEEP MARINE HOLDINGS, INC. et al. | § | Case No. 09-39313-H1-11 |
| Debtors | § | |

| | | |
|---|---|---|
| John D. Bittner, Liquidating Trustee | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. Proc. No. _____ |
| | § | |
| Nasser Kazeminy, | § | |
| NJK Holding, Corp., | § | |
| DCC Ventures, LLC, | § | |
| Otto B. Candies, Jr., | § | |
| Otto B. Candies, III, | § | |
| Otto Candies, LLC, and | § | |
| Candies Shipbuilders, LLC | § | |
| | § | |
| Defendants, | § | |
| | § | |
| and | § | |
| | § | |
| Deep Marine Holdings, Inc. and | § | |
| Deep Marine Technologies, Inc., | § | |
| | § | |
| Nominal Defendants/Debtors. | § | |

**TRUSTEE'S ORIGINAL COMPLAINT**
**AND**
**OBJECTIONS TO DEFENDANTS' PROOFS OF CLAIM**

## TABLE OF CONTENTS

I.     NATURE OF THE ACTION ................................................................. 1

II.    JURISDICTION AND VENUE ............................................................. 1

III.   PARTIES ............................................................................................. 2

IV.   CORE BANKRUPTCY CAUSES OF ACTION .................................. 5

       COUNT 1: FRAUDULENT TRANSFER UNDER 11
       U.S.C. §§ 544 AND 550 ................................................................ 6

       COUNT 2: PREFERENTIAL TRANSFERS UNDER 11
       U.S.C. §§ 547 and 550 ................................................................ 13

       COUNT 3: RECHARACTERIZATION ........................................ 14

       COUNT 4: EQUITABLE SUBORDINATION ............................. 15

V.     FACTUAL BACKGROUND FOR RELATED CAUSES OF
       ACTION ........................................................................................... 17

       A.    Mr. Kazeminy Exercised Control Over DMT .................... 17

       B.    Otto Candies, LLC Made Fraudulent Transfers
            Mischaracterized as Loans ................................................ 19

       C.    Otto Candies, LLC Further Exacerbated Deep Marine's
            Financial Position ............................................................. 20

       D.    Kazeminy and Candies Defendants Forced Minority
            Shareholders out of DMT via a Short Form Merger ........... 25

       E.    Mr. Kazeminy Instructed Deep Marine to Make
            Questionable Payments ...................................................... 25

VI.   CAUSES OF ACTION ...................................................................... 25

       COUNT 5: BREACH OF FIDUCIARY DUTIES ........................... 25

       COUNT 6: AIDING AND ABETTING BREACH OF
       FIDUCIARY DUTIES ................................................................. 28

       COUNT 7: SHAREHOLDER OPPRESSION ................................ 29

       COUNT 8: FRAUD AND FRAUDULENT
       INDUCEMENT ........................................................................... 30

i

COUNT 9: NEGLIGENT MISREPRESENTATION ........................................ 31

COUNT 10: BREACH OF CONTRACT............................................................ 32

COUNT 11: TORTIOUS INTERFERENCE ...................................................... 33

COUNT 12: RESTITUTION AND UNJUST
ENRICHMENT............................................................................................ 33

COUNT 13: MONEY HAD AND RECEIVED ................................................. 34

COUNT 14: CONVERSION............................................................................. 35

COUNT 15: CONSPIRACY ............................................................................. 36

COUNT 16: PARTNERSHIP LIABILITY ....................................................... 36

COUNT 17: ATTORNEYS' FEES.................................................................... 37

VII.   OBJECTIONS TO INSIDERS' PROOFS OF CLAIM............................................. 37

A.   OBJECTIONS TO INSIDER PROOFS OF CLAIM
AGAINST DMH ........................................................................................ 37

B.   OBJECTIONS TO INSIDER PROOFS OF CLAIM
AGAINST DMT ........................................................................................ 42

C.   OBJECTIONS TO INSIDER PROOFS OF CLAIM
AGAINST DM1 ........................................................................................ 52

D.   OBJECTIONS TO INSIDER PROOFS OF CLAIM
AGAINST DM2 ........................................................................................ 53

E.   OBJECTIONS TO INSIDER PROOFS OF CLAIM
AGAINST DM3 ........................................................................................ 53

F.   OBJECTIONS TO INSIDER PROOFS OF CLAIM
AGAINST DM4 ........................................................................................ 56

G.   TWELFTH OBJECTION TO ALL INSIDER PROOFS OF
CLAIM ...................................................................................................... 57

VIII.  PRAYER ...................................................................................................................... 58

Dallas 305754v2

Plaintiff John D. Bittner, in his capacity as Liquidating Trustee of the Deep Marine Liquidating Trust ("Trustee"), files this Original Complaint and Objections to Defendants' Proofs of Claim ("Complaint and Objections") against Defendants as follows:

## I.    NATURE OF THE ACTION

1.    In this proceeding, the Trustee alleges the following:  (1) core claims against Defendants arising out of the Bankruptcy Code, including recovery of fraudulent conveyances and preferential transfers under 11 U.S.C. §§ 548, 544, and 547; (2) requests for equitable subordination and recharacterization of Defendants' proofs of claim under 11 U.S.C. § 510(c) and equity; (3) claims related to the bankruptcy proceeding for breach of fiduciary duties, aiding and abetting breach of fiduciary duties, shareholder oppression, fraud and fraudulent inducement, negligent misrepresentation, breach of contract, tortious interference, restitution and unjust enrichment, money had and received, conversion, conspiracy, partnership liability, and attorneys' fees; and (4) objections to Defendants' proofs of claim under Bankruptcy Rule 3007 and 11 U.S.C. § 502.

## II.    JURISDICTION AND VENUE

2.    On December 4, 2009 ("Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, in this Court.

3.    This adversary proceeding arises in the jointly administered Chapter 11 case of the Debtors now pending in this Court (09-39313, 09-39314, 09-39315, 09-39316, 09-39317, 09-39318, jointly administered under 09-39313, collectively, "bankruptcy cases").

4.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. §§ 502, 506, 544, 547, 548, and 550.

Dallas 305754v2

5.     Venue for this adversary proceeding lies in the Bankruptcy Court for the Southern District of Texas pursuant to 28 U.S.C. § 1409.

6.     This adversary proceeding is brought under FED. R. BANKR. P. 7001 and combines an objection to the claims of Defendants under FED. R. BANKR. P. 3007.

### III.     PARTIES

### A.     Debtors

7.     The Debtors are Deep Marine Holdings, Inc. ("DMH"), Deep Marine Technology Incorporated ("DMT"), Deep Marine 1, LLC ("DM1"), Deep Marine 2, LLC ("DM2"), Deep Marine 3, LLC ("DM3"), and Deep Marine 4, LLC ("DM4").  For convenience, the Debtors may be referred to collectively as "Deep Marine."

### B.     Plaintiff

8.     Plaintiff John D. Bittner was appointed under the Joint Plan of Reorganization ("Plan") to serve as the Trustee of the Deep Marine Liquidating Trust.  Pursuant to Article 4 of the Plan, Deep Marine's causes of action were transferred to the Liquidating Trust.  Further, the Trustee was appointed as a representative of Deep Marine's estates under 11 U.S.C. § 1123(b) to pursue the claims.  The Liquidating Trust is the proper party to prosecute, defend against, and settle the claims and objections to Defendants' claims asserted in this lawsuit.  *See* Joint Plan of Reorganization §§ 4.03, 4.04, 4.10 and 11 USC § 1123(b)(3).

### C.     The Kazeminy Defendants

9.     Defendant Nasser Kazeminy is a resident of Minnesota.  Mr. Kazeminy has filed proofs of claim in one or more of the above-captioned bankruptcy cases.  The Complaint and Objections will be served upon Mr. Kazeminy at the address listed on his proof of claim form: c/o Joseph M. Windler, Winthrop & Weinstine, P.A., at 225 South Sixth Avenue, Suite 3500, Minneapolis, MN 55402-4629 by first class mail, postage prepaid.  Alternatively, under FED. R.

2

BANKR. P. 7004, Mr. Kazeminy may be served by mailing the Summons, Complaint and Objections, and Scheduling Order to him via U.S. First Class mail, postage prepaid, at his residence in Minnesota.

10.     Defendant NJK Holding Corporation ("NJK Holding"), a Minnesota corporation, is owned and/or controlled by Mr. Kazeminy.  NJK Holding has filed proofs of claim in one or more of the above-captioned bankruptcy cases.  The Complaint and Objections will be served upon NJK Holding at the address listed on its proof of claim form:  c/o Joseph M. Windler, Winthrop & Weinstine, P.A., at 225 South Sixth Avenue, Suite 3500, Minneapolis, MN 55402-4629 by first class mail, postage prepaid.  Alternatively, under FED. R. BANKR. P. 7004, NJK Holding may be served by mailing the Summons, Complaint and Objections, and Scheduling Order to NJK Holding via U.S. First Class mail, postage prepaid, to an officer at its principal place of business in Minneapolis, Minnesota.

11.     Defendant DCC Ventures, LLC ("DCC Ventures") is a Nevada limited liability company.  DCC Ventures has filed proofs of claim in one or more of the above-captioned bankruptcy cases.  The Complaint and Objections will be served upon DCC Ventures at the address listed on its proof of claim form:  c/o Joseph M. Windler, Winthrop & Weinstine, P.A., at 225 South Sixth Avenue, Suite 3500, Minneapolis, MN 55402-4629 by first class mail, postage prepaid.  Alternatively, under FED. R. BANKR. P. 7004, DCC Ventures may be served by mailing the Summons, Complaint and Objections, and Scheduling Order to DCC Ventures via U.S. First Class mail, postage prepaid, to an officer at its principal place of business in Minneapolis, Minnesota.

12.     For convenience, Mr. Kazeminy, NJK Holding, and DCC Ventures will be referred to collectively as the "Kazeminy Defendants."  The Kazeminy Defendants are "insiders"

Dallas 305754v2

under 11 U.S.C. § 101(31), although the statutory definition of an insider is not an exclusive one. Nevertheless, the Kazeminy Defendants actually controlled more than 20% of the equity ownership of Deep Marine and are therefore, statutory insiders.

### D.      The Candies Defendants

13.      Defendant Otto B. Candies, Jr. is a resident of Louisiana.  Under FED. R. BANKR. P. 7004, he may be served by mailing the Summons, Complaint and Objections, and Scheduling Order to his residence in Des Allemands, Louisiana 70030, by first class mail, postage prepaid.

14.      Defendant Otto Candies, LLC is a limited liability company organized under the laws of Louisiana with its principal place of business in Louisiana.  Otto Candies, LLC has filed proofs of claim in one or more of the above-captioned bankruptcy cases.  The Complaint and Objections will be served upon Otto Candies, LLC at the address listed on its proof of claim form: c/o Karl J. Zimmermann at 1100 Poydras St., Suite 2200, New Orleans, LA 70163 by first class mail, postage prepaid.  Alternatively, under FED. R. BANKR. P. 7004, Otto Candies, LLC may be served by mailing the Summons, Complaint and Objections, and Scheduling Order to Otto Candies, LLC via U.S. First Class mail, postage prepaid, to an officer at its principal place of business in Des Allemands, Louisiana.

15.      Defendant Candies Shipbuilders, LLC is a limited liability company organized under the laws of Louisiana with its principal place of business at 17271 Highway 90, Des Allemands, Louisiana 70030.  Candies Shipbuilders, LLC has filed proofs of claim in one or more of the above-captioned bankruptcy cases.  The Complaint and Objections will be served upon Candies Shipbuilders at the address listed on its proof of claim form:  c/o Karl J. Zimmermann at 1100 Poydras St., Suite 2200, New Orleans, LA 70163 by first class mail, postage prepaid.  Alternatively, under FED. R. BANKR. P. 7004, Candies Shipbuilders may be served by mailing the Summons, Complaint and Objections, and Scheduling Order to Candies

Shipbuilders via U.S. First Class mail, postage prepaid, to an officer at its principal place of business in Des Allemands, Louisiana.

16.     Defendant Otto B. Candies, III is a resident of Louisiana and the Secretary of Defendant Otto Candies, LLC.  Otto Candies, III has filed proofs of claim in one or more of the above-captioned bankruptcy cases.  The Complaint and Objections will be served upon Mr. Candies, III at the address listed on his proof of claim form: c/o Karl J. Zimmermann at 1100 Poydras St., Suite 2200, New Orleans, LA 70163 by first class mail, postage prepaid. Alternatively, he may be served by mailing the Summons, Complaint and Objections, and Scheduling Order to him via U.S. First Class mail, postage prepaid, at his residence in Louisiana under FED. R. BANKR. P. 7004.

17.     For convenience, Otto Candies, Jr., Otto Candies, LLC, Candies Shipbuilders, LLC, and Otto Candies, III will be referred to collectively as the "Candies Defendants."  The Candies Defendants are "insiders" under 11 U.S.C. § 101(31), although the statutory definition of an insider is not an exclusive one.  Nevertheless, the Candies Defendants actually controlled more than 20% of the equity ownership of Deep Marine and are therefore, statutory insiders.

18.     For convenience, the Kazeminy and Candies Defendants may be referred to collectively as "insiders."

### IV.     CORE BANKRUPTCY CAUSES OF ACTION

19.     On December 4, 2009, Deep Marine Holdings, Inc. and all of its subsidiary entities filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, in the United States Bankruptcy Court for the Southern District of Texas, jointly administered under Case Number 09-39313.

20.     On March 15, 2010, the Debtors filed a Joint Plan of Reorganization.  On June 1, 2010, the Debtors filed a supplement to their Plan which consisted of the Liquidating Trust

Agreement and four Purchase and Sale Agreements.  On June 2, 2010, the Bankruptcy Court confirmed the Plan and Plan Supplement.  The Plan has become effective by its terms.  Section 4.03 of the Plan appointed John Bittner as the Trustee of the Deep Marine Liquidating Trust.

21.    During the course of this adversary proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers made to the Defendants that are avoidable.  It is the Trustee's intention to recover all transfers made by one or more of the Debtors of an interest of the Debtors in property and to or for the benefit of any Defendant or any other transferee.  The Trustee reserves his right to amend this Original Complaint to include: (i) further information regarding the transfers, (ii) additional transfers, (iii) modifications of and/or revisions to Defendants' names, (iv) additional defendants, and/or (v) additional causes of action (i.e., but not exclusively, 11 U.S.C. §§ 542, 544, 545, 548, and 549) (collectively, the "Amendments"), that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to the Original Complaint.

**COUNT 1: FRAUDULENT TRANSFER UNDER 11 U.S.C. §§ 544 AND 550**

22.    Under 11 U.S.C. §§ 544 and 550 and the Texas Uniform Fraudulent Transfer Act (TEX. BUS. & COM. CODE § 24.001 *et seq*.), a trustee may avoid transfers of property of a debtor or the incurrence of an obligation of the debtor made within four years of the petition date for which the debtor did not receive reasonably equivalent value, and that was made while the debtor was insolvent, that rendered the debtor insolvent, or that left the debtor undercapitalized.  Likewise, under 11 U.S.C. §§ 548 and 550, the trustee may avoid those transfers made while insolvent or that rendered the debtor insolvent and for which the debtor did not receive reasonably equivalent value within two years of the petition date.  Alternatively, the trustee may avoid transfers of the assets of, or in the incurrence of an obligation by, the debtor with actual intent to hinder, delay, or defraud the creditors of that debtor.

6

23.     From 2004 until the Petition Date, each of the Debtors was insolvent inasmuch as their liabilities exceeded their assets at fair value.   From 2006 forward, DMT was habitually unable to pay its chief operational expenses, namely, the Otto Candies, LLC crew charges. Accordingly, each of the Debtors was also undercapitalized from 2006 forward.

24.     Specifically, Otto Candies, LLC and Mr. Kazeminy, either through DCC Ventures, NJK Holding, or in his personal capacity, received at least the following transfers from funds of DMT on the dates and in the amounts set forth below (the "Transfers").

| Date | Amount | Transferee |
|------|--------|------------|
| 04/30/2009 | $322,877.24 | Otto Candies, LLC |
| 04/17/2009 | $338,865.63 | Otto Candies, LLC |
| 09/17/2008 | $500,000 | Otto Candies, LLC |
| 09/2008 | $207,000 | Kazeminy |
| 01/24/2008 | $942,876.40 | Otto Candies, LLC |
| 12/28/2007 | $241,809.84 | Otto Candies, LLC |
| 12/11/2007 | $1,054,353.10 | Otto Candies, LLC |
| 12/04/2007 | $850,000 | Otto Candies, LLC |
| 11/30/2007 | $8,715.52 | Otto Candies, LLC |
| 10/31/2007 | $226,033.53 | Otto Candies, LLC |
| 10/26/2007 | $234,152.30 | Otto Candies, LLC |
| 10/05/2007 | $1,921,788.05 | Otto Candies, LLC |
| 10/01/2007 | $220,689.03 | Otto Candies, LLC |
| 08/24/2007 | $8,740.76 | Otto Candies, LLC |
| 08/13/2007 | $222,724.70 | Otto Candies, LLC |
| 07/25/2007 | $1,100,265.68 | Otto Candies, LLC |
| 07/16/2007 | $37,822.36 | NJK Holding |
| 07/16/2007 | $1,051,266.64 | Otto Candies, LLC |
| 07/02/2007 | $98,697.95 | Otto Candies, LLC |
| 06/01/2007 | $675,537 | NJK Holding |
| 05/21/2007 | $5,852.63 | Otto Candies, LLC |
| 05/14/2007 | $686,862.02 | Otto Candies, LLC |
| 05/14/2007 | $1,519,555.60 | Otto Candies, LLC |
| 03/30/2007 | $900,000 | Otto Candies, LLC |
| 03/09/2007 | $930,000 | Otto Candies, LLC |
| 02/23/2007 | $1,151.40 | NJK Holding |
| 02/21/2007 | $266,224.38 | Otto Candies, LLC |
| 02/19/2007 | $3,743.28 | Otto Candies, LLC |
| 02/09/2007 | $460,194.67 | Otto Candies, LLC |
| 02/08/2007 | $226,835.50 | Otto Candies, LLC |

| Date | Amount | Transferee |
|---|---|---|
| 01/11/2007 | $220,727.03 | Otto Candies, LLC |
| 01/04/2007 | $943,714.70 | Otto Candies, LLC |
| 01/01/2007 | $14,828.58 | NJK Holding |
| 12/28/2006 | $19,296.06 | NJK Holding |
| 12/22/2006 | $1,452,829.15 | Otto Candies, LLC |
| 12/07/2006 | $20,806.89 | NJK Holding |
| 12/06/2006 | $1,462,000 | NJK Holding |
| 12/06/2006 | $18,510.75 | NJK Holding |
| 11/27/2006 | $575,563.75 | Otto Candies, LLC |
| 11/07/2006 | $802,978.35 | Otto Candies, LLC |
| 11/03/2006 | $26,799.03 | NJK Holding |
| 10/17/2006 | $750,000 | Otto Candies, LLC |
| 09/15/2006 | $286,367.35 | Otto Candies, LLC |
| 09/15/2006 | $28,424.46 | NJK Holding |
| 08/29/2006 | $462,788.90 | Otto Candies, LLC |
| 08/24/2006 | $176,602.16 | Otto Candies, LLC |
| 08/23/2006 | $35,137.74 | NJK Holding |
| 08/04/2006 | $1,382,377.40 | Otto Candies, LLC |
| 07/25/2006 | $31,603.11 | NJK Holding |
| 07/25/2006 | $132,485.45 | Otto Candies, LLC |
| 07/20/2006 | $74,873 | NJK Holding |
| 07/14/2006 | $25,976.92 | NJK Holding |
| 07/12/2006 | $465,223.49 | Otto Candies, LLC |
| 06/30/2006 | $168,183 | NJK Holding |
| 06/28/2006 | $358,139.89 | Otto Candies, LLC |
| 05/22/2006 | $2,116.69 | Otto Candies, LLC |
| 05/11/2006 | $352,969.50 | Otto Candies, LLC |
| 04/19/2006 | $442,059.05 | Otto Candies, LLC |
| 04/03/2006 | $172,740.18 | Otto Candies, LLC |
| 03/30/2006 | $219,926.31 | Otto Candies, LLC |
| 03/15/2006 | $467,835.83 | Otto Candies, LLC |
| 03/02/2006 | $259,540 | Otto Candies, LLC |
| 02/19/2006 | $155,282.68 | Otto Candies, LLC |
| 02/09/2006 | $86,727.31 | Otto Candies, LLC |
| 02/03/2006 | $419,038.03 | Otto Candies, LLC |
| 01/27/2006 | $281,817.05 | Otto Candies, LLC |
| 01/17/2006 | $396,019.81 | Otto Candies, LLC |
| 01/09/2006 | $420 | NJK Holding |
| 01/04/2006 | $420 | NJK Holding |
| 12/19/2005 | $134,029.09 | Otto Candies, LLC |
| 12/06/2005 | $344,443.12 | Otto Candies, LLC |

8

25. Alternatively, upon information and belief, DMT made the Transfers with actual intent to hinder, delay, or defraud Deep Marine's creditors as the badges of fraud are present. Deep Marine made the Transfers to insiders at a time when Deep Marine had been in default under its obligations to lenders and was facing potential collection actions. Deep Marine made the Transfers under non-standard terms. Upon information and belief, the Transfers included non-cash transfers, such as the transfer of spare parts, fuel, equipment, and other assets of Deep Marine.

26. Under 11 U.S.C. § 548, the Trustee is entitled to avoid the above-referenced Transfers occurring between December 4, 2007 and December 4, 2009.

27. Upon information and belief at all times between December 4, 2005 and December 4, 2009, DMT had unsecured creditors in existence. DMT has both contingent and liquidated unsecured creditors, with claims arising before the Transfers and thereafter. At least some of these creditors have allowable claims and could have avoided the Transfers under applicable state law.

28. Among these creditors are creditors such as Centerpoint Energy and Aramark, and the undersecured claim of GE Business Financial Services. These creditors held allowable unsecured claims against DMT as of the Petition Date.

29. The Trustee, for the benefit of the Debtors' Chapter 11 estates and creditors, and as the representative of the estate under Section 1123(b)(3)(B) of the Bankruptcy Code, pursuant to Section 544(b) of the Bankruptcy Code, hereby elects to enforce the rights of these creditors and any others to avoid the Transfers under the Texas Uniform Fraudulent Transfer Act (TEX. BUS. & COM. CODE § 24.001 *et seq.*) and/or other applicable law.

30.     The Trustee (standing in the shoes of the Debtors) holds the powers of a trustee under Section 1107 of the Bankruptcy Code and may also avoid the Transfers under Section 544(a)(1), which provides the trustee, as of the commencement of the case, and without regard to any knowledge of the trustee or any creditors, the power to avoid any transfers that are voidable by a creditor that extends credit at the time of the commencement of the case and obtains a judicial lien, whether or not such creditor exists (the "Hypothetical Creditor").  The Hypothetical Creditor would be able to avoid the Transfers pursuant to the Texas Uniform Fraudulent Transfer Act and/or other applicable law.   Accordingly, the Trustee may avoid the Transfers (totaling $28,936,257.02).

31.     In accordance with 11 U.S.C. § 550, the Trustee is entitled to recover the amount of the fraudulent transfers, along with pre- and post-judgment interest and costs and reasonable attorneys' fees and costs.

32.     A trustee may avoid obligations incurred by the debtor that were made with actual intent to hinder, delay, defraud creditors of a debtor, or that were without reasonably equivalent value and (1) left the debtor with unreasonably small capital, (2) rendered the debtor insolvent, or (3) made while the debtor was insolvent.

33.     While Deep Marine was insolvent or rendered insolvent, it incurred obligations to one or more of the Kazeminy and Candies Defendants.  These obligations left all of the Debtors, including DMT, with unreasonably small capital to operate.  DMT did not receive reasonably equivalent value for incurring obligations to the Kazeminy and Candies Defendants because, *inter alia*, the Transfers were disguised equity contributions.   In addition to not receiving reasonably equivalent value in exchange for the obligations, DMT was engaged in or about to engage in transactions for which the remaining assets of DMT were unreasonably small in

10

relation to the business or transactions, and DMT intended to incur or should have believed it would incur debts beyond DMT's ability to pay as they became due.  For example, at the time of the loans, the Debtors were unable to pay their chief operating expenses, namely, the Otto Candies, LLC crew charges, and DMT was negatively cash flowing with little prospect of substantial positive cash flow.

34.     During the four years before the Petition Date, each of the Debtors, including DMT, incurred at least the following obligations ("Obligations") for which they did not receive reasonably equivalent value, and that are avoidable.

| Date | Amount | Equity Contributor |
|---|---|---|
| 12/01/2009 | $133,566 | DCC Ventures |
| 11/24/2009 | $400,000 | DCC Ventures |
| 11/23/2009 | $66,060 | DCC Ventures |
| 11/18/2009 | $331,843 | DCC Ventures |
| 09/09/2009 | $262,500 | DCC Ventures |
| 09/09/2009 | $262,500 | Otto Candies, LLC |
| 07/30/2009 | $330,000 | DCC Ventures |
| 07/31/2009 | $330,000 | Otto Candies, LLC |
| 07/01/2009 | $920,000 | DCC Ventures |
| 07/01/2009 | $920,000 | Otto Candies, LLC |
| 10/01/2008 | $3,853,226.35 | Otto Candies, LLC |
| 09/25/2008 | $250,000 | Otto Candies, LLC |
| 09/24/2008 | $400,000 | Otto Candies, LLC |
| 08/28/2008 | $2,000,000 | DCC Ventures |
| 08/20/2008 | $148,401 | DCC Ventures |
| 08/18/2008 | $2,000,000 | Otto Candies, LLC |
| 08/14/2008 | $296,599.19 | DCC Ventures |
| 08/13/2008 | $1,030,000 | DCC Ventures |
| 08/12/2008 | $225,000 | DCC Ventures |
| 08/04/2008 | $300,000 | DCC Ventures |
| 07/01/2008 | $3,902,275.45 | Otto Candies, LLC |
| 06/18/2008 | $1,000,000 | DCC Ventures |
| 06/05/2008 | $450,000 | DCC Ventures |
| 05/23/2008 | $1,000,000 | DCC Ventures |
| 05/23/2008 | $500,000 | DCC Ventures |
| 05/08/2008 | $550,000 | DCC Ventures |
| 04/21/2008 | $500,000 | DCC Ventures |
| 02/11/2008 | $46,498.89 | Candies Shipbuilders |

11

| Date | Amount | Equity Contributor |
|------|--------|--------------------|
| 03/31/2008 | $102,798.48 | Candies Shipbuilders |
| 12/12/2007 | $3,254,319.45 | Otto Candies, LLC |
| 10/15/2007 | $1,723,396.87 | Otto Candies, LLC |
| 07/10/2007 | $4,004,024.37 | Otto Candies, LLC |
| 06/07/2007 | $3,111,287.26 | Otto Candies, LLC |

35. The Trustee is entitled to a declaration that the Obligations are avoided, invalid, and that DMT's estate is entitled to recovery of the assets transferred in payment of these Obligations.

36. Likewise, the fixing and perfection of a lien is a transfer of an interest in property that may be avoided if it was made with actual intent to hinder, delay, or defraud creditors or made in a manner that renders the transfers avoidable. The transfers are avoidable because the obligations were to an insider, they were concealed, Deep Marine was threatened with suit, Deep Marine was insolvent or became insolvent shortly after the obligations were incurred, and Deep Marine pledged its essential assets of its business to an insider. Deep Marine granted liens on numerous assets to Otto Candies, LLC, an insider, to secure obligations that may be avoided as fraudulent transfers which include, but are not limited to, the following liens:

| Lien Holder | Asset | Date |
|-------------|-------|------|
| Otto Candies, LLC | DMT Diamond | 12/01/2006 |
| Otto Candies, LLC | DMT Emerald | 12/01/2008 |
| Otto Candies, LLC | DMT Topaz | 01/17/2008 |
| Otto Candies, LLC | DMT Sapphire | 01/17/2008 |

37. Additionally, the Trustee is entitled to avoid the alleged obligations and liens relating to Deep Marine's remotely operated vehicles to the extent that the acquisition of those obligations was actually an equity contribution and/or part of a scheme to hinder or delay collection by creditors.

38. The Trustee is entitled to a declaration that the aforementioned liens are avoided and the alleged obligations based on them are invalidated under 11 U.S.C. §§ 544 and 550.

12

## COUNT 2: PREFERENTIAL TRANSFERS UNDER 11 U.S.C. §§ 547 and 550

39.     Under 11 U.S.C. §§ 547 and 550, the Trustee may avoid transfers of an interest in property made to the insiders within one year prior to the Petition Date, that were made while Deep Marine was insolvent, as payment of an antecedent debt, and that entitled the transferee to receive more than it would in a Chapter 7 liquidation.

40.     Otto Candies, LLC received the following transfers of interests in property from DMT's funds on the dates and in the amounts set forth below.

| Date | Amount | Transferee |
|------|--------|------------|
| 04/30/2009 | $322,877.24 | Otto Candies, LLC |
| 04/17/2009 | $338,865.63 | Otto Candies, LLC |

41.     The transfers were made while DMT was insolvent.  As evidenced by Deep Marine's schedules and financial statements, as well as the proofs of claim that have been received to date, Deep Marine's liabilities exceed its assets to the point that unsecured creditors will not receive a full payout of their claims from the Deep Marine bankruptcy estates.

42.     As a result of the transfers, Otto Candies, LLC received more than it would have received if Deep Marine's cases were under Chapter 7 of the Bankruptcy Code, the transfers had not been made, and Otto Candies, LLC received payment of its debts under the provisions of the Bankruptcy Code. The transfers were payments on an antecedent debt to or for the benefit of a creditor of DMT.  Specifically, an indebtedness based on unsecured obligations of DMT for providing crew members to certain of Deep Marine's vessels.

43.     In accordance with the foregoing, the above-referenced transfers are avoidable pursuant to 11 U.S.C. § 547(b).

44.     Accordingly, pursuant to 11 U.S.C. § 550, the Trustee is entitled to recover the amount of the above-referenced preferential payments, along with pre- and post-judgment interest and costs.

## COUNT 3: RECHARACTERIZATION

45.     Under 11 U.S.C. § 105(a) and applicable non-bankruptcy law, the Court may recharacterize alleged "loans" as equity contributions.  The Candies Defendants' and DCC Ventures's claims for "loans" should be treated in their entirety as equity interests that rank below the claims of Deep Marine's creditors under the principles of equity.

46.     During the relevant period, Deep Marine was undercapitalized.  Over several years the Candies Defendants and DCC Ventures infused capital into Deep Marine that they characterized as "loans."  This mischaracterization of equity contributions caused injury to Deep Marine leaving it over-leveraged and undercapitalized.

47.     Moreover, the alleged "loans" did not have market terms, Deep Marine's Board of Directors did not validly approve the "loans," and the "loans" lacked any economic intent by the lenders.  The alleged use of the "loans" proceeds was to fund operations when Deep Marine was unable to otherwise pay its bills as they came due.  The "loans" were not made according to customary business practices and were intended to support the position of the equity owner, not the predictable economic benefit customary with a lender.  Under principles of equity, the "loans" were actually equity infusions.

48.     The Candies Defendants and DCC Ventures made at least the following equity contributions and characterized them as "loans" on the dates and in the amounts set forth below.

| Date | Amount | Equity Contributor |
|------|--------|--------------------|
| 12/01/2009 | $133,566 | DCC Ventures |
| 11/24/2009 | $400,000 | DCC Ventures |
| 11/23/2009 | $66,060 | DCC Ventures |

14

| Date | Amount | Equity Contributor |
|------|--------|--------------------|
| 11/18/2009 | $331,843 | DCC Ventures |
| 09/09/2009 | $262,500 | DCC Ventures |
| 09/09/2009 | $262,500 | Otto Candies, LLC |
| 07/30/2009 | $330,000 | DCC Ventures |
| 07/31/2009 | $330,000 | Otto Candies, LLC |
| 07/01/2009 | $920,000 | DCC Ventures |
| 07/01/2009 | $920,000 | Otto Candies, LLC |
| 10/01/2008 | $3,853,226.35 | Otto Candies, LLC |
| 09/25/2008 | $250,000 | Otto Candies, LLC |
| 09/24/2008 | $400,000 | Otto Candies, LLC |
| 08/28/2008 | $2,000,000 | DCC Ventures |
| 08/20/2008 | $148,401 | DCC Ventures |
| 08/18/2008 | $2,000,000 | Otto Candies, LLC |
| 08/14/2008 | $296,599.19 | DCC Ventures |
| 08/13/2008 | $1,030,000 | DCC Ventures |
| 08/12/2008 | $225,000 | DCC Ventures |
| 08/04/2008 | $300,000 | DCC Ventures |
| 07/01/2008 | $3,902,275.45 | Otto Candies, LLC |
| 06/18/2008 | $1,000,000 | DCC Ventures |
| 06/05/2008 | $450,000 | DCC Ventures |
| 05/23/2008 | $1,000,000 | DCC Ventures |
| 05/23/2008 | $500,000 | DCC Ventures |
| 05/08/2008 | $550,000 | DCC Ventures |
| 04/21/2008 | $500,000 | DCC Ventures |
| 02/11/2008 | $46,498.89 | Candies Shipbuilders |
| 03/31/2008 | $102,798.48 | Candies Shipbuilders |
| 12/12/2007 | $3,254,319.45 | Otto Candies, LLC |
| 10/15/2007 | $1,723,396.87 | Otto Candies, LLC |
| 07/10/2007 | $4,004,024.37 | Otto Candies, LLC |
| 06/07/2007 | $3,111,287.26 | Otto Candies, LLC |

49.     Accordingly, under general principles of equity and pursuant to 11 U.S.C. §105(a), all of the amounts listed above should be recharacterized as equity contributions.

### COUNT 4: EQUITABLE SUBORDINATION

50.     For the reasons set forth herein, under 11 U.S.C. § 510(c), the insiders' claims and interests should be subordinated in their entirety to all other claims or interests asserted against Deep Marine.

Dallas 305754v2

51.     The Kazeminy and Candies Defendants knew that (1) Deep Marine was undercapitalized, (2) Deep Marine was over-leveraged, and (3) they owed fiduciary duties to Deep Marine as insiders.  The insiders made at least the following contributions on the dates and in the amounts set forth below.

| Date | Amount | Equity Contributor |
|---|---|---|
| 12/01/2009 | $133,566 | DCC Ventures |
| 11/24/2009 | $400,000 | DCC Ventures |
| 11/23/2009 | $66,060 | DCC Ventures |
| 11/18/2009 | $331,843 | DCC Ventures |
| 09/09/2009 | $262,500 | DCC Ventures |
| 09/09/2009 | $262,500 | Otto Candies, LLC |
| 07/30/2009 | $330,000 | DCC Ventures |
| 07/31/2009 | $330,000 | Otto Candies, LLC |
| 07/01/2009 | $920,000 | DCC Ventures |
| 07/01/2009 | $920,000 | Otto Candies, LLC |
| 10/01/2008 | $3,853,226.35 | Otto Candies, LLC |
| 09/25/2008 | $250,000 | Otto Candies, LLC |
| 09/24/2008 | $400,000 | Otto Candies, LLC |
| 08/28/2008 | $2,000,000 | DCC Ventures |
| 08/20/2008 | $148,401 | DCC Ventures |
| 08/18/2008 | $2,000,000 | Otto Candies, LLC |
| 08/14/2008 | $296,599.19 | DCC Ventures |
| 08/13/2008 | $1,030,000 | DCC Ventures |
| 08/12/2008 | $225,000 | DCC Ventures |
| 08/04/2008 | $300,000 | DCC Ventures |
| 07/01/2008 | $3,902,275.45 | Otto Candies, LLC |
| 06/18/2008 | $1,000,000 | DCC Ventures |
| 06/05/2008 | $450,000 | DCC Ventures |
| 05/23/2008 | $1,000,000 | DCC Ventures |
| 05/23/2008 | $500,000 | DCC Ventures |
| 05/08/2008 | $550,000 | DCC Ventures |
| 04/21/2008 | $500,000 | DCC Ventures |
| 02/11/2008 | $46,498.89 | Candies Shipbuilders |
| 03/31/2008 | $102,798.48 | Candies Shipbuilders |
| 12/12/2007 | $3,254,319.45 | Otto Candies, LLC |
| 10/15/2007 | $1,723,396.87 | Otto Candies, LLC |
| 10/2007-12/3/2009 | $674,542 | NJK Holding |
| 07/10/2007 | $4,004,024.37 | Otto Candies, LLC |
| 06/07/2007 | $3,111,287.26 | Otto Candies, LLC |
| 02/2006-08/2009 | $656,600 | NJK Holding |

16

52.     Under principles of equity, as set forth below, these contributions should not be considered loans.   Accordingly, pursuant to 11 U.S.C. § 510(c), the insiders should not be permitted to receive any distributions on any of their claims before payment in full is made to all unsecured creditors.

## V.     FACTUAL BACKGROUND FOR RELATED CAUSES OF ACTION

53.     In 2001, Deep Marine began providing comprehensive subsea services to the offshore oil and gas industry which were capable of operating down to depths of 10,000 feet salt water.   As Deep Marine began to expand, it required capital support.   Deep Marine sought capital support from various sources, including Mr. Kazeminy and Otto Candies, LLC.   Over time, Deep Marine had difficulty borrowing money from financial institutions to run its daily operations because it was burdened with debt caused by the insiders' dealings.   As a result, Deep Marine entered into additional agreements and transactions with the insiders that deepened its debt and ultimately led to its bankruptcy.

### A.     Mr. Kazeminy Exercised Control Over DMT

54.     Beginning in 2004, DCC Ventures and Mr. Kazeminy made significant capital investments in Deep Marine.   DCC Ventures and Mr. Kazeminy subsequently converted their investments into shares of Deep Marine stock.

55.     Over time, Mr. Kazeminy increased his influence and control over Deep Marine's business affairs.   He personally influenced and controlled Deep Marine's Board of Directors and was a member of the board for a period of time.   On December 16, 2004, Mr. Kazeminy resigned from the board, and John Ellingboe was elected Chairman of the Board.   At the time, Mr. Ellingboe was the President of Mergers and Acquisitions for NJK Holding.   As an example of Mr. Kazeminy's control, in May 2006 he personally corresponded with Bruce Gilman, Larry

Lenig, and Drew Michel stating that he would personally "instruct the board of Deep Marine Holdings to issue [] an option for 15,000 shares."

56.     On June 12, 2006, DMT and NJK Holding allegedly entered into an Oversight Services Agreement.  On May 31, 2008, DMT, DMH, and NJK Holding allegedly entered into a second Oversight Services Agreement.   Under the Oversight Services Agreements, Mr. Kazeminy, through NJK Holding, was purportedly given the personal and discretionary power to designate advisory, consulting, and other services in relation to the day-to-day operations of Deep Marine, strategic planning, domestic and international marketing, and financial oversight. Mr. Kazeminy openly acknowledged the power and influence he held under the Oversight Services Agreements and as controlling shareholder of DMT.  For example, on July 30, 2008, Mr. Kazeminy sent a letter on DMT letterhead to all DMT employees proclaiming himself as "Controlling Shareholder" and stating that he, along with Otto Candies, Jr., the Board, and Paul McKim had decided on various director and officer changes.

57.     Using his controlling shareholder status and power under the Oversight Services Agreements, Mr. Kazeminy filled the Deep Marine Board of Directors and senior management with his own hand-picked individuals.   In addition, Mr. Kazeminy charged in excess of $1,000,000 in purported management fees and expenses for services rendered under the Oversight Services Agreements, including, without limitation, $7,000 per hour for travel.

58.     In 2008 and 2009, Mr. Kazeminy, through DCC Ventures, further burdened Deep Marine by characterizing approximately $10,500,000 of capital contributions to Deep Marine as loans.  All of these purported loans in 2008 and 2009 were approved by Mr. Kazeminy and John Hudgens, Deep Marine's Chief Financial Officer.  Deep Marine was insolvent at all times when Mr. Kazeminy, through DCC Ventures, made the purported loans.   These contributions were

actually self-interested transactions entered into without independent fairness opinions.  Upon information and belief, none of the Debtors' Board of Directors validly approved the resolutions that covered these transactions.  Upon information and belief, these purported loans were actually equity investments by Mr. Kazeminy in Deep Marine.  Nonetheless, Mr. Kazeminy, through DCC Ventures, now seeks approximately $10,500,000 from Deep Marine for these transactions as evidenced by proof of claim #34 in case #09-39314 and proof of claim #10 in case #09-39317.

**B.**     **Otto Candies, LLC Made Fraudulent Transfers Mischaracterized as Loans**

59.     On August 18, 2008, Otto Candies, LLC transferred $2,000,000 to DMT's "Cash Concentration Account."  On September 9, 2008, Otto Candies, LLC transferred an additional $500,000 to Deep Marine.  Just over a week later, on September 17, 2008, Deep Marine transferred $500,000 from its "Cash Concentration Account" to Otto Candies, LLC.  Deep Marine received additional advances from Otto Candies, LLC on September 24, 2008, in the amount of $400,000 and again on September 25, 2008, in the amount of $250,000.

60.     No promissory notes were executed for any of these transfers, and there is no evidence that Deep Marine was required to repay any of these amounts.  Nonetheless, on February 19, 2010 (more than a year and a half after the initial transfer), Otto Candies, LLC filed a proof of claim, seeking repayment for these transfers, stating "money loaned" as the basis of its claim.  In claim #12 in case #09-39314, Otto Candies, LLC classified these transfers as advance payment for services and short term advances.  These transactions were made through self-dealing for which no fairness opinions were obtained or sought.  The transactions were not authorized by Deep Marine and the transfers were based upon obligations that were never enforceable.

61.     These transactions served no legitimate purpose and appear to have been undertaken to avoid bank covenants limiting the maximum amount of loans or debt that Deep Marine could undertake.  Thus, these transfers allowed Deep Marine to artificially maintain its credit rating, which in turn allowed Deep Marine to take on even more debt than it would have been able to otherwise.

### C.     Otto Candies, LLC Further Exacerbated Deep Marine's Financial Position

62.     By May 31, 2008, Otto Candies, LLC was the second largest shareholder in Deep Marine, owning 9,406,900 shares, equaling 39.381% of the company.  Otto Candies, LLC was able to acquire such a large stake in the company through several transactions which benefitted Otto Candies, LLC.

#### a)     Mother Theresa

63.     The first of these transactions occurred on August 25, 2004, when Otto Candies, LLC and DMT entered into a Blanket Time Charter Agreement for the Mother Theresa vessel. DMT had the option to terminate the charter agreement upon written notice.  On November 16, 2006, Paul McKim, Deep Marine's CEO, provided written notice to Otto Candies, LLC that it was terminating the charter agreement.  Instead of complying with the charter agreement's termination provision, Otto Candies, LLC responded on January 17, 2007 by asserting that "DMT would be responsible for shortfalls in revenue" to Otto Candies, LLC until the agreement's normal expiration date.  Mr. McKim replied on February 2, 2007 attaching the termination notice and requesting that Otto Candies, LLC re-issue a corrected and adjusted invoice for services on the Mother Theresa.  Nonetheless, Otto Candies, LLC refused to comply with the charter agreement's termination provision.  In February 2010, Otto Candies, LLC filed proof of claim #10 in case #09-39314 asserting that DMT owes it a total of $1,698,899.85 for alleged shortfalls in Otto Candies, LLC's revenue from September 2006 through June 2007.

20

Otto Candies, LLC has not provided any documents obligating Deep Marine to pay for any shortfall in Otto Candies, LLC's revenue.

**b)    DMT Diamond (formerly the Nicki Candies)**

64.    In April 2005, Deep Marine purchased the DMT Diamond vessel from Otto Candies, LLC for $15,200,000.   In connection with the sale, DMT entered into a Vessel Operating Agreement with Otto Candies, LLC, pursuant to which Otto Candies, LLC was responsible for maintaining, crewing, and operating of the vessel.   Noble Denton Marine inspected the DMT Diamond in July 2008.   Its inspection revealed that no less than seven conditions that were "high" priority issues.   Noble Denton Marine conducted a second inspection in May 2009 and again noted numerous problems with the vessel.   As a result, the DMT Diamond was dry docked for four months.   While the DMT Diamond was out of service, Otto Candies, LLC's maintenance crew did very little repair work, and what they did was not up to proper standards.   Mr. McKim, Deep Marine's former CEO, has testified that the repair time may have cost Deep Marine between $8,000,000 to $15,000,000.

65.    In July 2008, Technip, a potential Deep Marine customer, was interested in signing a long-term contract with Deep Marine for use of the DMT Diamond.   As part of its due diligence, Technip conducted an audit of the vessel.   The audit revealed over 160 technical violations.   Technip subsequently informed Deep Marine that it would not enter into a contract if Deep Marine did not replace the Otto Candies, LLC crew.   In response, Deep Marine immediately replaced the Otto Candies, LLC crew with a crew provided by Hornbeck Offshore Services, a competitor of Otto Candies, LLC.   Upon information and belief, Otto Candies, LLC told its crew that Mr. McKim, who had replaced the crew, was going to be terminated and that the Otto Candies, LLC crew would be reinstated on the DMT Diamond.   Eventually Mr. McKim

21

was, in fact, terminated and the Otto Candies, LLC's crew was reinstated. Deep Marine ultimately lost the Technip contract.

### c) DMT Topaz (formerly the Agnes)

66.  On May 30, 2006, DMT leased and chartered the DMT Topaz vessel from Otto Candies, LLC for two years at a rate of $30,000 per day which included crew and maintenance. Prior to leasing the DMT Topaz, Otto Candies, LLC told Deep Marine that the vessel would meet all U.S. Coast Guard requirements. After taking delivery, Deep Marine hired independent inspectors to inspect the DMT Topaz. Despite Otto Candies, LLC's representations, the inspectors revealed that the vessel did not meet U.S. Coast Guard regulations necessary to perform diving operations. As a result, Deep Marine was forced to expend a significant amount of time and money to make the DMT Topaz sea-worthy and compliant with U.S. Coast Guard standards. To make matters worse, while Deep Marine was trying to bring the vessel up to standards, Otto Candies, LLC continued to charge Deep Marine $30,000 a day for the charter, even though Deep Marine was unable to utilize the vessel. Moreover, Otto Candies, LLC issued these improper charges even though Section 2(c) of the charter provided that any downtime due to equipment failure or Otto Candies, LLC's failure to meet U.S. Coast Guard regulations would be Otto Candies, LLC's responsibility.

67.  Deep Marine continued to have problems with the DMT Topaz through October 2007. Around that time, Deep Marine sent the DMT Topaz to Boston on a contract with Horizon Offshore, a customer, for a rate of $125,000 per day. Again, because of Otto Candies, LLC's failure to properly maintain the DMT Topaz, there were significant mechanical issues which ultimately resulted in the vessel being dry docked for two months.

22

68.     Deep Marine's documents show that it was forced to reduce its invoices to Horizon Offshore due to non-operational days and maintenance issues with DMT Topaz's bow thruster and generator.

69.     Despite the forgoing, Otto Candies, LLC's proof of claim #10 in case #09-39314 demands payment for $930,000 for services for the DMT Topaz during October 2007.  For the month of October 2007, Deep Marine lost $1,418,000 in revenues from Horizon Offshore and incurred a $930,000 charge plus interest from Otto Candies, LLC for services Deep Marine never received.   Thus, for December 2007 alone, Deep Marine lost approximately $2,348,000. Ultimately, the delays may have cost Deep Marine at least $7,500,000 in revenue as well as the daily lease and charter fees from Otto Candies, LLC during this period.  This further deepened Deep Marine's insolvency.

**d)     DMT Emerald**

70.     On April 20, 2005, Otto Candies, LLC signed an agreement with Bender Shipbuilding & Repair Company whereby Bender would build a vessel (later named the DMT Emerald) for $22,450,000 plus any change orders.  In late 2006, Otto Candies, LLC assigned the Bender Shipbuilding contract to DM2 for $29,497,426, which represented the agreed sales price plus change orders.

71.     While the DMT Emerald was being built, Otto Candies, LLC represented to Deep Marine that Otto Candies, LLC would provide the crew and maintenance contract for the vessel when it was finished.  Based upon these representations, Deep Marine secured a contract with BP whereby BP (formerly British Petroleum) would lease the DMT Emerald from Deep Marine. But just two weeks before BP was to take possession of the DMT Emerald, Otto Candies, LLC refused to provide a crew or to make the vessel ready in time for the BP contract to begin.  As a

result, Deep Marine was forced to retain a crew from Hornbeck at a significantly higher price than Otto Candies, LLC had agreed to charge.

       **e)**     **DMT Sapphire (formerly the Kelly Ann)**

     72.    In December 2007, DM4 purchased the DMT Sapphire from Otto Candies, LLC for a purchase price of $21,000,000.  Section 1.4 of the purchase agreement provided that Otto Candies, LLC would make certain improvements including a 40-ton knuckle boom crane.  Upon information and belief, Otto Candies, LLC subsequently charged Deep Marine $800,000 for a new crane.  Mr. McKim has testified that, rather than install the new crane on to the DMT Sapphire, Otto Candies, LLC actually used it to replace an older crane on another boat that Otto Candies, LLC was leasing to a Deep Marine competitor.  Otto Candies, LLC then took the used crane, painted it, and installed it on the DMT Sapphire.

     73.    In January 2008, Deep Marine hired Marine & Mainland to inspect the crane. Marine & Mainland concluded that it was unseaworthy due to both its design and workmanship. Among other things, "numerous pipe fittings were found to be cross-threaded," "numerous fittings were loose…[and] not properly sealed," "numerous areas [] were not seal welded," there were "pin holes in the welds," "all edge seam welds ha[d] been ground down excessively," "dirt/sand were found under paint and around grease zerts," "the pressure pipe manifolds repeatedly leak[ed]," "the auxiliary hoist base mount was found to be warped," and "numerous fasteners were missing [and] grease zerts were missing."  When Deep Marine confronted Otto Candies, LLC about the crane, a representative of Otto Candies, LLC told Mr. McKim that the crane was Deep Marine's and that they could take it or leave it.

**D.** **Kazeminy and Candies Defendants Forced Minority Shareholders out of DMT via a
Short Form Merger**

74.     On July 11, 2009, Deep Marine notified minority shareholders that on July 1,

2009, DMH and NKOC Inc. (the Kazeminy and Candies Defendants contributed their stock to

NKOC Inc. which merged with DMH) merged pursuant to Section 253 of the Delaware General

Corporation Law and that the minority shareholders were cashed out of their DMT stockholdings

at a price of $0.01 per share, or approximately $22,000 for all minority shareholders.  To acquire

the statutory percentage of shares, the Defendants purchased shares via a Kazeminy-controlled

conduit named The Triomphe Investors, LLC.

**E.** **Mr. Kazeminy Instructed Deep Marine to Make Questionable Payments**

75.     In March 2007, Mr. Kazeminy began ordering the payment of corporate funds to

Hays Insurance Companies for insurance consulting services.  Over the objections from Deep

Marine's CEO, Mr. McKim, Deep Marine engaged the Hays Company and sent them three

checks in the amount of $25,000.    It is questionable whether any of the Hays Companies

provided any meaningful services to Deep Marine.  On August, 19, 2008, Mr. Hudgens, Deep

Marine's CFO, ordered that there should be no further payments to Hays Companies.

## VI.    CAUSES OF ACTION

## COUNT 5: BREACH OF FIDUCIARY DUTIES

### A.    The Kazeminy Defendants

76.     The Trustee incorporates each of the above allegations by reference as if set forth

fully herein.

77.     As controlling shareholders and/or parties in control of Deep Marine, the

Kazeminy Defendants owed fiduciary duties to and/or had a special relationship with Deep

Marine and its shareholders.  Moreover, because Deep Marine was insolvent or in the vicinity or zone of insolvency, the Kazeminy Defendants owed fiduciary duties to Deep Marine's creditors.

78.     As set forth above, the Kazeminy Defendants breached their fiduciary duties by, without limitation, the following:

(a) installing certain members on Deep Marine's Board of Directors thereby controlling the board with proxy members;

(b) acting in bad faith and for their own personal and corporate interests;

(c) mismanaging Deep Marine to its detriment;

(d) paying money to Hays Insurance Company;

(e) engaging in self-dealing transactions unfair to Deep Marine;

(f) directing the Board to approve the self-dealing Oversight Services Agreements which further increased Mr. Kazeminey's control over the company while providing no legitimate services to Deep Marine;

(g) increasing Deep Marine's insolvency by, among other things, approving transfers and characterizing equity contributions to Deep Marine as loans; and

(h) directly and proximately causing Deep Marine's bankruptcy.

79.     In breaching their fiduciary duties, the Kazeminy Defendants acted willfully, wantonly, and outrageously.

80.      As a direct and proximate result of the Kazeminy Defendants' breaches of their fiduciary duties, Deep Marine, its shareholders, and its creditors suffered damages.

## B.        The Candies Defendants

81.     The Trustee incorporates each of the above allegations by reference as if set forth fully herein.

82.     As controlling shareholders and/or parties in control of Deep Marine, the Candies Defendants owed fiduciary duties and/or had a special relationship with Deep Marine and its

shareholders. Moreover, because Deep Marine was insolvent or in the vicinity or zone of insolvency, the Candies Defendants owed fiduciary duties to Deep Marine's creditors.

83.     As set forth above, the Candies Defendants breached their fiduciary duties by, without limitation, the following:

(a) acting in bad faith and for their own personal and corporate interests, including without limitation, causing Deep Marine to overpay for vessels, maintenance, and crews;

(b) engaging in self-dealing transactions unfair to Deep Marine;

(c) making misrepresentations to Deep Marine which Deep Marine relied upon to its detriment;

(d) breaching their agreements with Deep Marine for services, maintenance, and crews;

(e) increasing Deep Marine's insolvency by, among other things, characterizing equity contributions to Deep Marine as loans; and

(f) directly and proximately causing Deep Marine's bankruptcy.

84.     In breaching their fiduciary duties, the Candies Defendants acted willfully, wantonly, and outrageously.

85.      As a direct and proximate result of the Candies Defendants' breaches of their fiduciary duties, Deep Marine, its shareholders, and its creditors suffered damages.

## C.      All Defendants

86.     The Trustee incorporates each of the above allegations by reference as if set forth fully herein.

87.     The Kazeminy and Candies Defendants breached their fiduciary duties to Deep Marine and its creditors through a "short term" merger. The Kazeminy and Candies Defendants conspired to orchestrate an improper stock purchase and facilitate an improper short form merger. Through a short form merger under Delaware law, the Kazeminy and Candies

Defendants were permitted to cancel the shares of minority shareholders if they acquired the requisite statutory percentage. The result of the short form merger was an attempt to cancel equity interests of minority shareholders, avoid reporting Deep Marine's finances to the minority shareholders, and thus, conceal the Kazeminy and Candies Defendants' wrongful acts. Specifically, the Kazeminy and Candies Defendants arranged the purchase of Joseph Grano's shares using The Triomphe Investors, LLC as its vehicle. The purchase was for consideration unrelated to the value of the stock. While they were purchasing Mr. Grano's shares, the Kazeminy and Candies Defendants were privy to information not known to other shareholders and obtained only by virtue of their positions as de facto directors of Deep Marine.

88.     As a result of purchasing Mr. Grano's shares in relation to the short form merger, Deep Marine and its creditors were injured because (a) the short form merger tended to hinder the investigation of potential wrongful acts, (b) the short form merger resulted in potential negative tax consequences, and (c) the purchase of shares resulted in a secret profit by unauthorized self dealing.

89.     As a direct and proximate result of the Kazeminy and Candies Defendants' breaches of their fiduciary duties, the Kazeminy and Candies Defendants benefitted and/or Deep Marine, its shareholders, and its creditors suffered damages.

## COUNT 6: AIDING AND ABETTING BREACH OF FIDUCIARY DUTIES

90.     The Trustee incorporates each of the above allegations by reference as if set forth fully herein.

91.     The Candies Defendants breached their fiduciary duties as set forth above. The Kazeminy Defendants had direct knowledge that the Candies Defendants' conduct constituted breaches of their fiduciary duties.

28

92.     The Kazeminy Defendants participated in and/or intended to assist the Candies Defendants' breaches of fiduciary duties by allowing and approving the actions set forth above.

93.     The Kazeminy Defendants' assistance was a substantial factor in causing the Candies Defendants' breaches of fiduciary duties.

94.     As a result of the Kazeminy Defendants' assistance, Deep Marine, its shareholders, and its creditors suffered damages.

## COUNT 7: SHAREHOLDER OPPRESSION

95.     The Trustee incorporates each of the above allegations by reference as if set forth fully herein.

96.     Mr. Kazeminy, DCC Ventures, and Otto Candies, LLC were majority shareholders of, and controlled, Deep Marine.

97.     Mr. Kazeminy, DCC Ventures, and Otto Candies, LLC oppressed the minority shareholders by, without limitation:

(a) substantially defeating the minority shareholders' reasonable expectations;

(b) acting in a burdensome, harsh and wrongful manner;

(c) acting with a lack of probity and fair dealing in Deep Marine's affairs to the prejudice of the minority shareholders;

(d) departing from the standards of fair dealing on which the minority shareholders were entitled to rely;

(e) taking benefits from Deep Marine for themselves and converting Deep Marine's assets to the exclusion and detriment of the other shareholders; and

(f) orchestrating an improper short form merger.

98.     As a direct and proximate result of Mr. Kazeminy's, DCC Ventures's, and Otto Candies, LLC's oppressive conduct, Mr. Kazeminy, DCC Ventures, and Otto Candies, LLC benefitted and/or Deep Marine, its minority shareholders, and its creditors suffered damages.

## COUNT 8: FRAUD AND FRAUDULENT INDUCEMENT

99.      The Trustee incorporates each of the above allegations by reference as if set forth fully herein.

100.      Otto Candies, LLC represented that it would sell the DMT Sapphire to Deep Marine with a new crane installed.  Based on this representation, Deep Marine purchased the vessel from Otto Candies, LLC for $21,000,000, of which $800,000 was for a new crane.  But instead of installing a new crane, Otto Candies, LLC installed a used crane.

101.      Otto Candies, LLC represented that the DMT Topaz would be seaworthy and meet U.S. Coast Guard requirements.  Based on these representations, Deep Marine entered into a lease and charter agreement with Otto Candies, LLC and solicited and secured contracts for work.  Upon taking delivery, Deep Marine had the vessel inspected and discovered that it had significant mechanical issues and did not meet regulatory requirements.

102.      Otto Candies, LLC represented that it would provide crews and maintenance for the DMT Emerald.  Based on these representations, Deep Marine solicited and secured a contract with BP for use of the Emerald vessel.  But two weeks prior to the commencement of the BP contract, Otto Candies, LLC informed Deep Marine that it would not provide crews.  Deep Marine was forced to hire Hornbeck to crew its vessel at a significantly higher price.

103.      Otto Candies, LLC made these material misrepresentations knowing them to be false or made them as positive assertions without any knowledge of their truth.

104.      Otto Candies, LLC intended that Deep Marine rely and act upon these misrepresentations.

105.      Deep Marine justifiably relied upon Otto Candies, LLC's misrepresentations to Deep Marine's detriment.

106.    As a result of Deep Marine's reliance on Otto Candies, LLC's misrepresentations, Deep Marine, its shareholders, and its creditors suffered damages.

## COUNT 9: NEGLIGENT MISREPRESENTATION

107.    The Trustee incorporates each of the above allegations by reference as if set forth fully herein.

108.    Otto Candies, LLC made material misrepresentations upon which Deep Marine relied.  Otto Candies, LLC represented it would sell the DMT Sapphire to Deep Marine with a new crane installed.  Based on this representation, Deep Marine purchased the vessel for $21,000,000, of which $800,000 was for a new crane.  Instead of installing a new crane, Otto Candies, LLC installed a used crane.

109.    Otto Candies, LLC represented that the DMT Topaz would be seaworthy and meet U.S. Coast Guard requirements.  Based on these representations, Deep Marine entered into a lease and charter agreement with Otto Candies, LLC and solicited and secured contracts for work.  Upon taking delivery, Deep Marine had the vessel inspected and discovered that it had significant mechanical issues and did not meet regulatory requirements.

110.    Otto Candies, LLC represented that it would provide crews and maintenance for the DMT Emerald.  Based on these representations, Deep Marine solicited and secured a contract with BP for use of the vessel.  Two weeks prior to the commencement of the BP contract, Otto Candies, LLC informed Deep Marine that it would not provide crews.  Deep Marine was forced to hire Hornbeck to crew its vessel at a significantly higher price.

111.    Otto Candies, LLC made these material representations to affect Deep Marine's actions in relation to Deep Marine's business.

112.    These representations were false.

31

113.    Otto Candies, LLC did not exercise reasonable care or competence in making these misrepresentations to Deep Marine.

114.    Deep Marine relied upon these misrepresentations to Deep Marine's detriment.

115.    Otto Candies, LLC had actual knowledge that Deep Marine would rely on these misrepresentations.

116.    As a result of Deep Marine's reliance on Otto Candies, LLC's misrepresentations, Deep Marine, its shareholders, and its creditors suffered damages.

**COUNT 10: BREACH OF CONTRACT**

117.    The Trustee incorporates each of the above allegations by reference as if set forth fully herein.

118.    The contracts were not binding and enforceable, but to the extent they were, this count is made in the alternative. To the extent they were enforceable contracts, the Kazeminy Defendants breached the June 12, 2006 and May 31, 2008 Oversight Services Agreements by, without limitation failing to provide advisory, consulting and other services in relation to the day-to-day operations of the Company, strategic planning, domestic and international marketing and financial oversight.  As a result, Deep Marine suffered damages and ultimately filed for bankruptcy.

119.    Otto Candies, LLC breached the Blanket Time Charter Agreement between Otto Candies, LLC and DMT by, without limitation, failing to abide by the termination provisions as set forth in the agreement.  As a result, Deep Marine suffered damages.

120.    Otto Candies, LLC breached the DMT Topaz Master Time Charter Agreement with DMT by, without limitation, failing to provide a vessel which met U.S. Coast Guard standards and failing to take responsibility for equipment failures and downtime.  As a result, Deep Marine suffered damages.

32

121.    Deep Marine performed or tendered performance under these contracts.

122.    All conditions precedent have been met.

## COUNT 11: TORTIOUS INTERFERENCE

123.    The Trustee incorporates each of the above allegations by reference as if set forth fully herein.

124.    Otto Candies, Jr. and Otto Candies, III willfully and intentionally interfered with Deep Marine's contracts with Otto Candies, LLC by, without limitation, contributing in their individual capacities to Otto Candies, LLC's breaches described herein.

125.    Otto Candies, Jr.'s and Otto Candies, III's interference directly and proximately caused Otto Candies, LLC's breaches of contract.

126.    As a result, Deep Marine suffered damages.

## COUNT 12: RESTITUTION AND UNJUST ENRICHMENT

127.    The Trustee incorporates each of the above allegations by reference as if set forth fully herein.

128.    The Defendants have wrongfully secured benefits through fraud, duress, or taking undue advantage of Deep Marine, or have received benefits which would be unconscionable for Defendants to retain.

129.    The Trustee is entitled, in equity and good conscience, to the return of the benefits that Defendants took from Deep Marine which unjustly enriched Defendants at Deep Marine's expense.

130.    Upon information and belief, these unjust benefits include, without limitation:

(a) Any and all moneys sought and/or received by Otto Candies, LLC under charter, lease, or maintenance contracts with Deep Marine.  Because of its insider position, Otto Candies, LLC secured contracts to crew and maintain Deep Marine's vessels without having to compete.

(b) Any and all value sought and/or received by Otto Candies, LLC in connection with the sale of the DMT Sapphire with a new crane. Otto Candies, LLC received $800,000 for installation of a new crane but surreptitiously gave Deep Marine a used crane.

(c) Any and all moneys and/or equity interests stemming from alleged "loans" by Otto Candies, LLC to Deep Marine. Because of its insider position and Deep Marine's insolvency, Otto Candies, LLC issued several "loans" that were not made according to customary business practices, were not made at customary market rates, and further encumbered Deep Marine's financial status.

(d) Any and all moneys sought and/or received by Otto Candies, LLC as lease payments and for services for the DMT Topaz while it was docked due to maintenance issues. Otto Candies, LLC was contractually obligated to pay for downtime due to equipment failure or failure to satisfy U.S. Coast Guard rules and regulations.

(e) Any and all moneys sought and/or received by Otto Candies, LLC for services on the DMT Mother Theresa after Deep Marine terminated the Blanket Time Charter Agreement.

(f) Any and all moneys sought and/or received by DCC Ventures stemming from "loans" by DCC Ventures to Deep Marine. Because of its insider position and Deep Marine's insolvency, DCC Ventures issued several "loans" that were not made according to customary business practices, were not made at customary market rates, and further encumbering Deep Marine's financial status.

(g) Any and all moneys sought and/or received by NJK Holding for services and travel allegedly provided under the Oversight Services Agreements. NJK Holding did not provide any services to Deep Marine.

### COUNT 13: MONEY HAD AND RECEIVED

131. The Trustee incorporates each of the above allegations by reference as if set forth fully herein.

132. Upon information and belief, the money or its equivalent held by the Kazeminy and Candies Defendants that in equity and in good conscience does not belong to them include, without limitation:

(a) Any and all moneys received by Otto Candies, LLC under charter, lease, or maintenance contracts with Deep Marine. Because of its insider position,

Otto Candies, LLC secured contracts to crew and maintain Deep Marine's vessels without having to compete.

(b) Any and all value received by Otto Candies, LLC in connection with the sale of the DMT Sapphire with a new crane. Otto Candies, LLC received $800,000 for installation of a new crane but surreptitiously gave Deep Marine a used crane.

(c) Any and all money and/or equity interests stemming from alleged "loans" by Otto Candies, LLC to Deep Marine. Because of its insider position and Deep Marine's insolvency, Otto Candies, LLC issued several "loans" that were not made according to customary business practices, were not made at customary market rates, and further encumbered Deep Marine's financial status.

(d) Any and all moneys received by Otto Candies, LLC as lease payments and for services for the DMT Topaz while it was docked due to maintenance issues. Otto Candies, LLC was contractually obligated to pay for downtime due to equipment failure or failure to satisfy U.S. Coast Guard rules and regulations.

(e) Any and all moneys received by Otto Candies, LLC for services on the DMT Mother Theresa after Deep Marine terminated the Blanket Time Charter Agreement.

(f) Any and all moneys received by DCC Ventures stemming from "loans" by DCC Ventures to Deep Marine. Because of its insider position and Deep Marine's insolvency, DCC Ventures issued several "loans" that were not made according to customary business practices, were not made at customary market rates, and further encumbering Deep Marine's financial status.

(g) Any and all moneys received by NJK Holding for services and travel allegedly provided under the Oversight Services Agreements. NJK Holding did not provide any services to Deep Marine.

## COUNT 14: CONVERSION

133. The Trustee incorporates each of the above allegations by reference as if set forth fully herein.

134. As set forth above, the Defendants have improperly received and exercised dominion and control over, Deep Marine money and property to the exclusion of, or inconsistent with, Deep Marine's rights.

135. As a direct and proximate result, Deep Marine suffered damages.

## COUNT 15: CONSPIRACY

136.     The Trustee incorporates each of the above allegations by reference as if set forth fully herein.

137.     The Trustee asserts that upon information and belief, and without limitation, the Kazeminy Defendants and Otto Candies, LLC conspired to: (1) breach their respective fiduciary duties to Deep Marine; (2) convert funds: and (3) oppress other shareholders, as set forth above.

138.     As a direct and proximate result of this conduct, Deep Marine suffered damages.

139.     The Kazeminy Defendants and Otto Candies, LLC are jointly and severally liable for the damages Deep Marine suffered as a result of their conspiracy.

## COUNT 16: PARTNERSHIP LIABILITY

140.     The Trustee incorporates each of the above allegations by reference as if set forth fully herein.

141.     Upon information and belief Otto Candies, LLC, the Kazeminy Defendants, and Deep Marine formed a partnership or joint venture because each of the entities did, without limitation, one or more of the following:

(a) Otto Candies, LLC and the Kazeminy Defendants shared or had a right to share in Deep Marine's profits, gross returns, or revenues pursuant to the terms of the Oversight Services Agreements and Deep Marine's bylaws.

(b) Otto Candies, LLC and the Kazeminy Defendants expressed an intent to be partners in Deep Marine's business when they decided, among other things, to execute the Oversight Services Agreements and hold positions on Deep Marine's Board of Directors and Advisory Board.

(c) Otto Candies, LLC and the Kazeminy Defendants participated or had a right to participate in the control of the business pursuant to, among other things, the terms of the of the Oversight Services Agreements and through their positions on Deep Marine's Board of Directors and Advisory Board.

(d) Otto Candies, LLC and the Kazeminy Defendants shared or agreed to share in Deep Marine's liabilities for claims by third parties by paying for release of the DMT Emerald after it was seized by the U.S. Customs office as a result of

36

non-payment for amounts owed to a vendor, and purchasing many of Deep Marine's promissory notes from National City Commercial Capital Company.

(e) Otto Candies, LLC and the Kazeminy Defendants contributed money or property to Deep Marine's business to meet daily operating expenses.

142.    These transactions were made through self-dealing for which no fairness opinions were obtained or sought.  The transactions were not authorized by Deep Marine and the transfers were based upon obligations that were never enforceable.

143.    Upon information and belief, Deep Marine's creditors knew of this relationship and relied on the partnership when extending credit.  As a result, the partnership and each of its partners, Otto Candies, LLC and the Kazeminy Defendants, are liable for any debts and obligations owed by Deep Marine.

<strong>COUNT 17: ATTORNEYS' FEES</strong>

144.    The Trustee incorporates each of the above allegations by reference as if set forth fully herein.

145.    Pursuant to TEX. BUS. & COM. CODE § 24.013 and TEX. CIV. PRAC. REM. CODE § 38.001, the Trustee seeks all of his reasonable and necessary attorneys' fees and costs in connection with causes of action set forth above, including breach of contract and the Texas Fraudulent Transfer Act.

<strong>VII.    OBJECTIONS TO INSIDERS' PROOFS OF CLAIM</strong>

<strong>A.    OBJECTIONS TO INSIDER PROOFS OF CLAIM AGAINST DMH</strong>

<strong>CLAIM OBJECTION 1: NJK HOLDING'S Claim #122 in Case # 09-39313</strong>

146.    Under 11 U.S.C. § 502 and BLR 3007-1, the Trustee objects to NJK Holding's unsecured claim #122 filed on 03/31/2010 (claim #122 in case #09-39313 which is duplicative of claim #35 in case #09-39314).  NJK Holding's proof of claim is facially invalid and contains

insufficient supporting documentation.   Deep Marine disputes the amount, if any, that is allegedly owed NJK Holding.

147.    The Trustee objects to claim #122 in case #09-39313 in the amount of $674,542 filed by NJK Holding because it asserts that Deep Marine owed an amount for services not performed.   The claim states that NJK Holding performed under the Oversight Services Agreement dated May 31, 2008.  The claim attaches insufficient proof as to what services, if any, were provided, which employees of NJK Holding actually performed the services, or any itemized detail of services provided.   The Trustee objects to the claim on the basis that the Oversight Services Agreement is void because it memorializes an *ultra vires* transaction through which Deep Marine's management is impermissibly vested in Mr. Kazeminy.

148.    The claim should be disallowed because the contract was the result of a breach of duty.

149.    The claim should be disallowed because there was no consideration for the contract and the contract was a sham to justify breaches of duty.  The claim is barred by estoppel.

150.    The Trustee requests that this claim be disallowed in its entirety.

**CLAIM OBJECTION 2: NJK HOLDING'S Claim #123 in Case #09-39313**

151.    Under 11 U.S.C. § 502 BLR 3007-1, the Trustee objects to NJK Holding's unsecured claim #123 filed on 03/31/2010 (claim #123 in case #09-39313 which is duplicative of claim #36 in case #09-39314).   NJK Holding's proof of claim is facially invalid and contains insufficient supporting documentation.   Deep Marine disputes the amount, if any, that is allegedly owed NJK Holding.

152.    The Trustee objects to claim #123 in case #09-39313 in the amount of $656,600 filed by NJK Holding because it asserts that Deep Marine owes an amount for excessive travel expenses.

153.    The claim states that NJK Holding performed under the Oversight Services Agreement dated May 31, 2008.  The Oversight Services Agreement only provides that Deep Marine will reimburse NJK Holding for travel expenses incurred in providing services under the agreement.  The claim requests payment for travel expenses starting in February of 2006 and ending in August of 2009.  However, no provision in the Oversight Services Agreement purports to subject Deep Marine to pay for travel expenses prior to entering into the agreement.

154.    The claim asserts that flights cost $7,000 per hour.  The Trustee objects to the hourly cost of these flights because they are excessive, not reasonable, and upon information and belief, not even incurred for Deep Marine's benefit.  The Trustee further objects to the flight costs because the claim lacks sufficient proof as to what flights were taken, which employees of NJK Holding were actually transported, why a flat hourly rate is charged, or any indication as to what carrier actually provided the services. The Trustee objects to the claim on the basis that the Oversight Services Agreement is void because it memorializes an *ultra vires* transaction through which management of Deep Marine is impermissibly vested in Mr. Kazeminy.

155.    The claim should be disallowed because the contract was the result of a breach of duty.

156.    The claim should be disallowed because there was no consideration for the contract and the contract was a sham to justify breaches of duty.  The claim is barred by estoppel.

157.    The Trustee requests that this claim be disallowed in its entirety.

**CLAIM OBJECTION 3: NJK HOLDING'S Claim #124 in Case #09-39313**

158.    Under 11 U.S.C. § 502 and BLR 3007-1, the Trustee objects NJK Holding's unsecured claim #124 filed on 03/31/2010 (claim #124 in case #09-39313 which is duplicative of claim # 38 in case #09-39314).  NJK Holding's proof of claim is facially invalid and contains

insufficient supporting documentation. Deep Marine disputes the amount, if any, that is allegedly owed NJK Holding.

159.     The Trustee objects to claim #124 in case #09-39313 filed by NJK Holding because it asserts that Deep Marine must indemnify NJK Holding. The claim states that NJK Holding performed under an Oversight Services Agreement dated May 31, 2008. The Trustee objects to the claim on the basis that the Oversight Services Agreement is void because it memorializes an *ultra vires* transaction through which management of Deep Marine is impermissibly vested in Mr. Kazeminy. Further, if NJK Holding assumed the role of management of Deep Marine, NJK Holding assumed fiduciary duties to Deep Marine. NJK Holding cannot hide behind an indemnification provision given by Deep Marine while acting as a manager.

160.     The claim should be disallowed because the contract was the result of a breach of duty.

161.     The claim should be disallowed because there was no consideration for the contract and the contract was a sham to justify breaches of duty. The claim is barred by estoppel.

162.     The Trustee requests that this claim be disallowed in its entirety.

**CLAIM OBJECTION 4: NASSER KAZEMINY'S Claim #125 in Case #09-39313**

163.     Under 11 U.S.C. § 502 and BLR 3007-1, the Trustee objects to Mr. Kazeminy's unsecured claim #125 filed on 03/31/2010 (claim #125 in case #09-39313 which is duplicative of claim # 41 in case #09-39314). Mr. Kazeminy's proof of claim is facially invalid and contains insufficient supporting documentation. Deep Marine disputes the amount, if any, that is allegedly owed Mr. Kazeminy.

164.     The Trustee objects to claim #125 in case #09-39313 filed by Mr. Kazeminy because it asserts that Deep Marine must indemnify Mr. Kazeminy in a manner inconsistent with

40

any enforceable contract between the two.  The Oversight Services Agreement is a result of a breach of duty, was a sham, and is unenforceable.

165.    The claim states that Mr. Kazeminy performed services under the Oversight Services Agreement dated May 31, 2008.  The Trustee objects to the claim on the basis that the Oversight Services Agreement is void because it memorializes an *ultra vires* transaction through which management of Deep Marine is impermissibly vested in Mr. Kazeminy.  Further, if Mr. Kazeminy controlled the company that assumed the role of management of Deep Marine, Mr. Kazeminy assumed fiduciary duties to Deep Marine.  Mr. Kazeminy's attempt to hide behind an indemnification provision given by Deep Marine while controlling a fiduciary of the debtor is impermissible.  The Trustee objects to this claim for indemnification by a purported fiduciary in a manner inconsistent with the law and public policy, based on an unenforceable contract.

166.    The claim should be disallowed because the contract was the result of a breach of duty.

167.    The claim should be disallowed because there was no consideration for the contract and the contract was a sham to justify breaches of duty.  The claim is barred by estoppel.

168.    The Trustee requests that this claim be disallowed in its entirety.

**CLAIM OBJECTION 5: OTTO CANDIES, III'S Claim #136 in Case #09-39313**

169.    Under 11 U.S.C. § 502 and BLR 3007-1, the Trustee objects to Otto Candies, III's unsecured claim #136 filed on 04/21/2010 (claim #136 in case #09-39313 which is duplicative of claim #46 in case #09-39314).  Otto Candies, III's proof of claim is facially invalid and contains insufficient supporting documentation.   Deep Marine disputes the amount, if any, that is allegedly owed Otto Candies, III.

170.    The Trustee objects to claim #136 in case #09-39313 filed by Otto Candies, III to the extent that Otto Candies, III requests indemnification rights outside of the scope of Deep

41

Marine's bylaws and the laws of the State of Texas.  Deep Marine's bylaws provide that Deep Marine will indemnify former officers and directors in the event proceedings are brought against them only when acting in their capacity as an officer or director.

171.    The Trustee requests that this claim be disallowed in its entirety.

## B.    OBJECTIONS TO INSIDER PROOFS OF CLAIM AGAINST DMT

### CLAIM OBJECTION 6: OTTO CANDIES, LLC'S Claim #9 in Case #09-39314

172.    Under 11 U.S.C. § 502 and BLR 3007-1, DMT objects to Otto Candies, LLC's unsecured claim #9 filed on 02/19/2010 (claim #9 in case #09-39314 which is duplicative of secured claim #3 in case #09-39315, secured claim #1 in case #09-39316, secured claim #3 in case #09-39317, and secured claim #3 in case #09-39318 combined).  Otto Candies, LLC's proof of claim is facially invalid and contains insufficient supporting documentation.  Deep Marine disputes the amount, if any, that is allegedly owed Otto Candies, LLC.

173.    The Trustee objects to claim #9 in case #09-39314 in the amount of $19,528,662.91 filed by Otto Candies, LLC because (1) the claims are not for wages only, they include markups and interest, (2) to the extent this claim includes charges for the DMT Emerald, DMT Topaz, or DMT Sapphire, there is no agreement under which Deep Marine has agreed to interest on unpaid balances, and (3) the wages charged are not entirely supported by nor do they accurately correspond to Otto Candies, LLC's taxation and payroll records.

174.    With regard to the Diamond Vessel Operating Agreement, Otto Candies, LLC breached the agreement and therefore the agreement was void and unenforceable.  The agreement was the result of self-dealing and other breaches of fiduciary duty as set forth above. The agreement was a usurpation of corporate opportunity and an attempt to make a secret profit at the expense of Deep Marine and therefore void.  The agreement was executed by an employee as an *ultra vires* act and thus not enforceable.  The services provided were not provided

42

according to the terms of the agreement.  The agreement was breached by Otto Candies, LLC first by material breaches as further set forth above.  Any purported lien claimed by Otto Candies, LLC is invalid.

175.   The Trustee requests that this claim be disallowed in its entirety.

**CLAIM OBJECTION 7: OTTO CANDIES, LLC'S Claim #10 in Case #09-39314**

176.   Under 11 U.S.C. § 502 and BLR 3007-1, the Trustee objects to Otto Candies, LLC's unsecured claim #10 filed on 02/19/2010 (claim #10 in case #09-39314).  Otto Candies, LLC's proof of claim is facially invalid and contains insufficient supporting documentation. Deep Marine disputes the amount, if any, that is allegedly owed Otto Candies, LLC.

177.   The Trustee objects to claim #10 in case #09-39314 in the amount of $6,639,779.09 filed by Otto Candies, LLC because it asserts charges for services that were contractually not Deep Marine's responsibilities and for services that may not have actually been provided, are inflated, and without sufficient documentation to determine what services were performed.  Otto Candies, LLC's proof of claim includes a $930,000 charge for services allegedly performed in October 2007.  As explained above, Deep Marine and Otto Candies, LLC had a charter agreement that provided that downtime due to the owner's equipment failure or owner's responsibility to satisfy U.S. Coast Guard rules or regulations would be borne by the owner.  The DMT Agnes failed to meet U.S. Coast Guard regulations and inspection by an independent inspector.  Deep Marine was still charged the daily lease rate while the DMT Agnes was being brought up to standards.

178.   The Trustee further objects because Otto Candies, LLC's proof of claim lacks sufficient documentation.  The proof of claim simply attaches a chart of all fees without sufficient detail and explanation to allow Deep Marine to verify if the services were actually performed and how much it was charged for markups and interest.

43

179.    The Trustee requests that this claim be disallowed in its entirety.

**CLAIM OBJECTION 8: OTTO CANDIES, LLC'S Claim #11 in Case #09-39314**

180.    Under 11 U.S.C. § 502 and BLR 3007-1, the Trustee objects to Otto Candies, LLC's unsecured claim #11 filed on 02/19/2010 (claim #11 in case #09-39314).  Otto Candies, LLC's proof of claim is facially invalid and contains insufficient supporting documentation. Deep Marine disputes the amount, if any, that is allegedly owed Otto Candies, LLC.

181.    The Trustee objects to claim #11 in case #09-39314 in the amount of $3,111,287.26 filed by Otto Candies, LLC because the Assignment of Contract is outside of the ordinary course of business of Deep Marine.  The Deep Marine Board of Directors must approve of the transaction through which the contract was assigned to DM2 and no such approval was validly given.

182.    The Trustee further objects to this claim because it lacks sufficient proof as to the initial contract between Otto Candies, LLC and Bender Shipbuilding & Repair Company, contract specifications, and contract plans.

183.    The claim is unenforceable as it was the result of a breach of fiduciary duty as set forth above.  The contract was breached by Otto Candies, LLC and the product of deception.

184.    The Trustee requests that this claim be disallowed in its entirety.

**CLAIM OBJECTION 9: OTTO CANDIES, LLC'S Claim #12 in Case #09-39314**

185.    Under 11 U.S.C. § 502 and BLR 3007-1, the Trustee objects to Otto Candies, LLC's unsecured claim #12 filed on 02/19/2010 (claim #12 in case #09-39314).  Otto Candies, LLC's proof of claim is facially invalid and contains insufficient supporting documentation. Deep Marine disputes the amount, if any, that is allegedly owed Otto Candies, LLC.

186.    The Trustee objects to claim #12 in case #09-39314 in the amount of $2,769,352.51 filed by Otto Candies, LLC because no promissory notes or other documents

44

customarily associated with the existence of a debt accompanies the proof of claim.  Instead of providing any documents evidencing the formalities of creating a lender-debtor arrangement, the claim merely attaches evidence of advancements.  The Trustee further objects to classification of this claim as a claim and not an equity infusion.

187.    Immediately following the proof of claim form is a page titled, "Otto Candies LLC Advances to Deep Marine Technology, Inc. as of 12/3/09."  According to the claim, the advances were made beginning on August 18, 2008 through September 25, 2008.  All of these "advances" were made by an insider while Deep Marine was undercapitalized.  Thus, the amounts transferred to Deep Marine represent equity contributions and should be treated as such.

188.    Moreover, the alleged "loans" did not have market terms, Deep Marine's Board of Directors did not validly approve the "loans," and the "loans" lack any economic intent by the lenders.  The alleged use of the "loans" proceeds was to fund operations when Deep Marine was unable to otherwise pay its bills as they came due.  The "loans" were not made according to customary business practices and were intended to support the position of the equity owner, not the predictable economic benefit customary with a lender.  Under principles of equity, the "loans" were actually equity infusions.

189.    The Trustee requests that this claim be disallowed in its entirety.

**CLAIM OBJECTION 10: OTTO CANDIES, LLC'S Claim #13 in Case #09-39314**

190.    Under 11 U.S.C. § 502 and BLR 3007-1, the Trustee objects to Otto Candies, LLC's secured claim #13 filed on 02/19/2010 (claim #13 in case #09-39314).  Otto Candies, LLC's proof of claim is facially invalid and contains insufficient supporting documentation.  Deep Marine disputes the amount, if any, that is allegedly owed Otto Candies, LLC.

191.    The Trustee objects to claim #13 in case #09-39314 in the amount of $17,194,450.20 filed by Otto Candies, LLC because all of these "advances" were made by an

insider while Deep Marine was undercapitalized. Thus, the amounts transferred to Deep Marine represent equity contributions and should be treated as such. For the reasons set forth above, the amounts are not owed. The "loans" were made in breach of a fiduciary duty and are unenforceable. The "loans" were part of a scheme to make a secret profit and usurp corporate opportunities. The "loans" were not validly approved by the Board of Directors.

192.    The Trustee requests that this claim be disallowed in its entirety.

**CLAIM OBJECTION 11: CANDIES SHIPBUILDERS' Claim #14 in Case #09-39314**

193.    Under 11 U.S.C. § 502 and BLR 3007-1, the Trustee objects to Candies Shipbuilders' secured claim #14 filed on 02/19/2010 (claim #14 in case #09-39314 which is duplicative of claim #8 in case #09-39318). Candies Shipbuilders' proof of claim is facially invalid and contains insufficient supporting documentation. Deep Marine disputes the amount, if any, that is allegedly owed Candies Shipbuilders.

194.    The Trustee objects to claim #14 in case #09-39314 in the amount of $149,297.37 filed by Candies Shipbuilders because it is facially insufficient. The claim is for "Sapphire Modifications." No indication of what modifications were made to the DMT Sapphire appears in the claim, no invoices reflecting an amount due and owing to Candies Shipbuilders from DMT is in the claim, and no contract for modifications to the DMT Sapphire is in the claim.

195.    Further, the amount of the claim does not correspond to DMT's books and records. The claim asserts that Candies Shipbuilders holds a secured claim against DMT based on a maritime lien. DMT does not own any vessels against which a creditor could assert a maritime lien.

196.    If a contract exists, it is void and unenforceable as it was the result of a breach of fiduciary duty as set forth herein.

197.    The Trustee requests that this claim be disallowed in its entirety.

46

**CLAIM OBJECTION 12: DCC VENTURES' Claim #34 in Case #09-39314**

198.    Under 11 U.S.C. § 502 and BLR 3007-1, the Trustee objects to DCC Ventures' unsecured claim #34 filed on 03/31/2010 (claim #34 in case #09-39314).  DCC Ventures' proof of claim is facially invalid and contains insufficient supporting documentation.  Deep Marine disputes the amount, if any, that is allegedly owed DCC Ventures.

199.    The Trustee objects to claim #34 in case #09-39314 in the amount of $8,872,689.90 filed by DCC Ventures because all of these "loans" were made by an insider while Deep Marine was undercapitalized.  Thus, the amounts transferred to Deep Marine represent equity contributions and should be treated as such.  For the reasons set forth above, the amounts are not owed.

200.    Moreover, the alleged "loans" did not have market terms, Deep Marine's Board of Directors did not validly approve the "loans," and the "loans" lack any economic intent by the lenders.  The alleged use of the "loans" proceeds was to fund operations when Deep Marine was unable to otherwise pay its bills as they came due.  The "loans" were not made according to customary business practices and were intended to support the position of the equity owner, not the predictable economic benefit customary with a lender.   Under principles of equity, the "loans" were actually equity infusions.

201.    The Trustee requests that this claim be disallowed in its entirety.

**CLAIM OBJECTION 13: NJK HOLDING'S Claim #35 in Case #09-39314**

202.    Under 11 U.S.C. § 502 and BLR 3007-1, the Trustee objects to NJK Holding's unsecured claim #35 filed on 03/31/2010 (claim #35 in case #09-39314 which is duplicative of claim #122 in case #09-39313). NJK Holding's proof of claim is facially invalid and contains insufficient supporting documentation.  Deep Marine disputes the amount, if any, that is allegedly owed NJK Holding.

47

203.    The Trustee objects to claim #35 in case #09-39314 in the amount of $674,542 filed by NJK Holding because it asserts that Deep Marine owed an amount for services not performed.  The claim states that NJK Holding performed under the Oversight Services Agreement dated May 31, 2008.  The claim attaches insufficient proof as to what services, if any, were provided, which employees of NJK Holding actually performed the services, or any itemized detail of services provided.  The Trustee objects to the claim on the basis that the Oversight Services Agreement is void because it memorializes an *ultra vires* transaction through which Deep Marine's management is impermissibly vested in Mr. Kazeminy.

204.    The claim should be disallowed because the contract was the result of a breach of duty.

205.    The claim should be disallowed because there was no consideration for the contract and the contract was a sham to justify breaches of duty.  The claim is barred by estoppel.

206.    The Trustee requests that this claim be disallowed in its entirety.

**CLAIM OBJECTION 14: NJK HOLDING'S Claim #36 in Case #09-39314**

207.    Under 11 U.S.C. § 502 and BLR 3007-1, the Trustee objects to NJK Holding's unsecured claim #36 filed on 03/31/2010 (claim #36 in case #09-39314 which is duplicative of claim #123 in case #09-39313).  NJK Holding's proof of claim is facially invalid and contains insufficient supporting documentation.  Deep Marine disputes the amount, if any, that is allegedly owed NJK Holding.

208.    The Trustee objects to claim #136 in case #09-39314 in the amount of $656,600 filed by NJK Holding because it asserts that Deep Marine owes an amount for excessive travel expenses.

209.    The claim states that NJK Holding performed under the Oversight Services Agreement dated May 31, 2008.  The Oversight Services Agreement only provides that Deep

48

Marine will reimburse NJK Holding for travel expenses incurred in providing services under the agreement.  The claim requests payment for travel expenses starting in February of 2006 and ending in August of 2009.  However, no provision in the Oversight Services Agreement purports to subject Deep Marine to pay for travel expenses prior to entering into the agreement.

210.    The claim asserts that flights cost $7,000 per hour.  The Trustee objects to the hourly cost of these flights because they are excessive, not reasonable, and upon information and belief, not even incurred for Deep Marine's benefit.  The Trustee further objects to the flight costs because the claim lacks sufficient proof as to what flights were taken, which employees of NJK Holding were actually transported, why a flat hourly rate is charged, or any indication as to what carrier actually provided the services. The Trustee objects to the claim on the basis that the Oversight Services Agreement is void because it memorializes an *ultra vires* transaction through which management of Deep Marine is impermissibly vested in Mr. Kazeminy.

211.    The claim should be disallowed because the contract was the result of a breach of duty.

212.    The claim should be disallowed because there was no consideration for the contract and the contract was a sham to justify breaches of duty.  The claim is barred by estoppel.

213.    The Trustee requests that this claim be disallowed in its entirety.

**CLAIM OBJECTION 15: NJK HOLDING'S Claim #38 in Case #09-39314**

214.    Under 11 U.S.C. § 502 and BLR 3007-1, the Trustee objects to NJK Holding's unsecured claim #38 filed on 03/31/2010 (claim #38 in case #09-39314 which is duplicative of claim #124 in case #09-39313).  NJK Holding's proof of claim is facially invalid and contains insufficient supporting documentation.  Deep Marine disputes the amount, if any, that is allegedly owed NJK Holding.

215.     The Trustee objects to claim #38 in case #09-39314 filed by NJK Holding because it asserts that Deep Marine must indemnify NJK Holding.  The claim states that NJK Holding performed under an Oversight Services Agreement dated May 31, 2008.  The Trustee objects to the claim on the basis that the Oversight Services Agreement is void because it memorializes an *ultra vires* transaction through which management of Deep Marine is impermissibly vested in Mr. Kazeminy.   Further, if NJK Holding assumed the role of management of Deep Marine, NJK Holding assumed fiduciary duties to Deep Marine.  NJK Holding cannot hide behind an indemnification provision given by Deep Marine while acting as a manager.

216.     The claim should be disallowed because the contract was the result of a breach of duty.

217.     The claim should be disallowed because there was no consideration for the contract and the contract was a sham to justify breaches of duty.  The claim is barred by estoppel.

218.     The Trustee requests that this claim be disallowed in its entirety.

**CLAIM OBJECTION 16: NASSER KAZEMINY'S Claim #41 in Case #09-39314**

219.     Under 11 U.S.C. § 502 and BLR 3007-1, the Trustee objects to Mr. Kazeminy's unsecured claim #41 filed on 03/31/2010 (claim #41 in case #09-39314 which is duplicative of claim #125 in case #09-39313).  Mr. Kazeminy's proof of claim is facially invalid and contains insufficient supporting documentation.   Deep Marine disputes the amount, if any, that is allegedly owed Mr. Kazeminy.

220.     The Trustee objects to claim #41 in case #09-39314 filed by Mr. Kazeminy because it asserts that Deep Marine must indemnify Mr. Kazeminy in a manner inconsistent with any enforceable contract between the two.  The Oversight Services Agreement is a result of a breach of duty, was a sham, and is unenforceable.

50

221.    The claim states that Mr. Kazeminy performed services under the Oversight Services Agreement dated May 31, 2008.  The Trustee objects to the claim on the basis that the Oversight Services Agreement is void because it memorializes an *ultra vires* transaction through which management of Deep Marine is impermissibly vested in Mr. Kazeminy.  Further, if Mr. Kazeminy controlled the company that assumed the role of management of Deep Marine, Mr. Kazeminy assumed fiduciary duties to Deep Marine.  Mr. Kazeminy's attempt to hide behind an indemnification provision given by Deep Marine while controlling a fiduciary of the debtor is impermissible.  The Trustee objects to this claim for indemnification by a purported fiduciary in a manner inconsistent with the law and public policy, based on an unenforceable contract.

222.    The claim should be disallowed because the contract was the result of a breach of duty.

223.    The claim should be disallowed because there was no consideration for the contract and the contract was a sham to justify breaches of duty.  The claim is barred by estoppel.

224.    The Trustee requests that this claim be disallowed in its entirety.

**CLAIM OBJECTION 17: OTTO CANDIES, III'S Claim #46 in Case #09-39314**

225.    Under 11 U.S.C. § 502 and BLR 3007-1, the Trustee objects to Otto Candies, III's unsecured claim #46 filed on 04/21/2010 (claim #46 in case #09-39314 which is duplicative of claim #136 in case #09-39313).  Otto Candies, III's proof of claim is facially invalid and contains insufficient supporting documentation.   Deep Marine disputes the amount, if any, that is allegedly owed Otto Candies, III.

226.    The Trustee objects to claim #46 in case #09-39314 filed by Otto Candies, III to the extent that Otto Candies, III requests indemnification rights outside of the scope of Deep Marine's bylaws and the laws of the State of Texas.  Deep Marine's bylaws provide that Deep

Marine will indemnify former officers and directors in the event proceedings are brought against them only when acting in their capacity as an officer or director.

227.   The Trustee requests that this claim be disallowed in its entirety.

## C.   OBJECTIONS TO INSIDER PROOFS OF CLAIM AGAINST DM1

## CLAIM OBJECTION 18: OTTO CANDIES, LLC'S Claim #3 in Case #09-39315

228.   Under 11 U.S.C. § 502 and BLR 3007-1, the Trustee objects to Otto Candies, LLC's secured claim #3 filed on 02/19/2010 (claim #3 in case #09-39315 is duplicative of part of claim #9 in case #09-39314).  Otto Candies, LLC's proof of claim is facially invalid and contains insufficient supporting documentation.   Deep Marine disputes the amount, if any, that is allegedly owed Otto Candies, LLC.

229.   The Trustee objects to claim #3 in case #09-39315 in the amount of $5,668,890.54 filed by Otto Candies, LLC because (1) under Fifth Circuit law, ship owners, joint venturers, investors, or shareholders in a ship owning business cannot hold a maritime lien, *see Sasportes v. Sol de Copacabana*, 581 F.2d 1204 (5th Cir. 1978), (2) the claims are not for wages only, they include markups and interest, and (3) the wages charged are not entirely supported by nor do they accurately correspond to Otto Candies, LLC's taxation and payroll records.

230.   Otto Candies, LLC breached the Diamond Vessel Operating Agreement and therefore the agreement was void and unenforceable.  The agreement was the result of self-dealing and other breaches of fiduciary duty as set forth below.  The agreement was a usurpation of corporate opportunity and an attempt to make a secret profit at the expense of Deep Marine and therefore void.  The agreement was *ultra vires* and thus not enforceable.  The services provided were not provided according to the terms of the agreement.  The agreement was breached by Otto Candies, LLC first by material breaches as further set forth herein.  Any purported lien claimed by Otto Candies, LLC is invalid.

52

231.    The Trustee requests that this claim be disallowed in its entirety.

**D.      OBJECTIONS TO INSIDER PROOFS OF CLAIM AGAINST DM2**

**CLAIM OBJECTION 19: OTTO CANDIES, LLC'S Claim #1 in Case #09-39316**

232.    Under 11 U.S.C. § 502 and BLR 3007-1, the Trustee objects to Otto Candies, LLC's secured claim #1 filed on 02/19/2010 (claim #1 in case #09-39316 which is duplicative of part of claim #9 in case #09-39314).  Otto Candies, LLC's proof of claim is facially invalid and contains insufficient supporting documentation.  Deep Marine disputes the amount, if any, that is allegedly owed Otto Candies, LLC.

233.    The Trustee objects to claim #1 in case #09-39316 in the amount of $5,142,890.88 filed by Otto Candies, LLC because (1) under Fifth Circuit law, ship owners, joint venturers, investors, or shareholders in a ship owning business cannot hold a maritime lien, *see Sasportes v. Sol de Copacabana*, 581 F.2d 1204 (5th Cir. 1978), (2) the claims are not for wages only, they include markups and interest, (3) there is no agreement under which Deep Marine has agreed to interest on unpaid balances, and (4) the wages charged are not entirely supported by nor do they accurately correspond to Otto Candies, LLC's taxation and payroll records.

234.    Any purported lien claimed by Otto Candies, LLC is invalid.

235.    The Trustee requests that this claim be disallowed in its entirety.

**E.      OBJECTIONS TO INSIDER PROOFS OF CLAIM AGAINST DM3**

**CLAIM OBJECTION 20: OTTO CANDIES, LLC'S Claim #3 in Case #09-39317**

236.    Under 11 U.S.C. § 502 and BLR 3007-1, the Trustee objects to Otto Candies, LLC's secured claim #3 filed on 02/19/2010 (claim #3 in case #09-39317 which is duplicative of part of claim #9 in case #09-39314).  Otto Candies, LLC's proof of claim is facially invalid and contains insufficient supporting documentation.  Deep Marine disputes the amount, if any, that is allegedly owed Otto Candies, LLC.

Dallas 305754v2

237.    Upon information and belief, the Trustee objects to claim #3 in case #09-39317 in the amount of $4,132,821.47 filed by Otto Candies, LLC because The Trustee objects to claim #9 in case #09-39314 in the amount of $19,528,662.91 filed by Otto Candies, LLC because (1) under Fifth Circuit law, ship owners, joint venturers, investors, or shareholders in a ship owning business cannot hold a maritime lien, *see Sasportes v. Sol de Copacabana*, 581 F.2d 1204 (5th Cir. 1978), (2) the claims are not for wages only, they include markups and interest, (3) there is no agreement under which Deep Marine has agreed to interest on unpaid balances, and (4) the wages charged are not entirely supported by nor do they accurately correspond to Otto Candies, LLC's taxation and payroll records.

238.    Any purported lien claimed by Otto Candies, LLC is invalid.

239.    The Trustee requests that this claim be disallowed in its entirety.

**CLAIM OBJECTION 21: OTTO CANDIES, LLC'S Claim #4-2 in Case #09-39317**

240.    Under 11 U.S.C. § 502 and BLR 3007-1, the Trustee objects to Otto Candies, LLC's secured claim #4-2 filed on 03/17/2010 (claim #4-2 in case #09-39317).  Otto Candies, LLC's proof of claim is facially invalid and contains insufficient supporting documentation. Deep Marine disputes the amount, if any, that is allegedly owed Otto Candies, LLC.

241.    The Trustee objects to claim #4-2 in case #09-39317 in the amount of $1,597,845.89 filed by Otto Candies, LLC because it for an interest in DM3.  Further, there is no debt that a first priority ship mortgage could secure.  The claim asserted is for three loans made to DM3 on July 1, 2009 through September 9, 2009.  All interests represented in the claim were made by insiders while DM3 was insolvent.  Thus, the claim does not reflect an indebtedness owed by DM3.  The promissory notes attached to the claim are capital contributions because they contain excessively high interest rates, are demand notes with no due date, and require approval only by an officer and not by the board of directors.  Further, because the promissory

54

notes evidence "loans" made outside the ordinary course of business, failure to gain approval by the board of directors renders them invalid.

242.    The preferred ship mortgage attached to the claim is invalid.  By its terms, the preferred ship mortgage creates a security interest in favor of the Kazeminy and Candies Defendants in the DMT Topaz.  Specifically, the preferred ship mortgage discusses principle and interest obligations arising under the promissory notes attached to the claim.  As set forth above, the promissory notes are a legal fiction.  The promissory notes referenced as "obligations" in the preferred ship mortgage actually represent equity infusions.   Preferred ship mortgages are statutory mortgages.  Preferred ship mortgages are given as security for indebtedness.  The claim lists no indebtedness upon which a preferred ship mortgage can be predicated.

243.    The Trustee requests that this claim be disallowed in its entirety.

**CLAIM OBJECTION 22: DCC VENTURES' Claim #10 in Case #09-39317**

244.    Under 11 U.S.C. § 502 and BLR 3007-1, the Trustee objects to DCC Ventures' secured claim #10 filed on 03/31/2010 (claim #10 in case #09-39317).  DCC Ventures' proof of claim is facially invalid and contains insufficient supporting documentation.  Deep Marine disputes the amount, if any, that is allegedly owed DCC Ventures.

245.    The Trustee objects to claim #10 in case #09-39317 in the amount of $2,443,969 plus $82,402.94 in interest filed by DCC Ventures because it is an equity infusion in DM3.  The claim asserted is for three "loans" made to DM3 on July 1, 2009 through September 9, 2009.  For the reasons set forth above, the amounts are not owed.

246.    Moreover, the alleged "loans" did not have market terms, Deep Marine's Board of Directors did not validly approve the "loans," and the "loans" lack any economic intent by the lenders.  The alleged use of the "loans" proceeds was to fund operations when Deep Marine was unable to otherwise pay its bills as they came due.  The "loans" were not made according to

55

customary business practices and were intended to support the position of the equity owner, not the predictable economic benefit customary with a lender.   Under principles of equity, the "loans" were actually equity infusions.

247.    All interests represented in the claim were made by an insider of DM3 while DM3 was insolvent.

248.    The Trustee requests that this claim be disallowed in its entirety.

F.    **OBJECTIONS TO INSIDER PROOFS OF CLAIM AGAINST DM4**

**CLAIM OBJECTION 23: OTTO CANDIES, LLC'S Claim #3 in Case #09-39318**

249.    Under 11 U.S.C. § 502 and BLR 3007-1, the Trustee objects to Otto Candies, LLC's secured claim #3 filed on 02/19/2010 (claim #3 in case #09-39318 which is duplicative of part of claim #9 in case #09-39314).  Otto Candies, LLC's proof of claim is facially invalid and contains insufficient supporting documentation.  Deep Marine disputes the amount, if any, that is allegedly owed Otto Candies, LLC.

250.    Upon information and belief, the Trustee objects to claim #3 in case #09-39318 in the amount of $4,584,060.03 filed by Otto Candies, LLC because (1) under Fifth Circuit law, ship owners, joint venturers, investors, or shareholders in a ship owning business cannot hold a maritime lien, *see Sasportes v. Sol de Copacabana*, 581 F.2d 1204 (5th Cir. 1978), (2) the claims are not for wages only, they include markups and interest, (3) there is no agreement under which Deep Marine has agreed to interest on unpaid balances, and (4) the wages charged are not entirely supported by nor do they accurately correspond to Otto Candies, LLC's taxation and payroll records.

251.    Any purported lien claimed by Otto Candies, LLC is invalid.

252.    The Trustee requests that this claim be disallowed in its entirety.

Dallas 305754v2

**CLAIM OBJECTION 24: CANDIES SHIPBUILDERS' Claim #8 in Case #09-39318**

253.    Under 11 U.S.C. § 502 and BLR 3007-1, the Trustee objects to Candies Shipbuilders' secured claim #8 filed on 03/26/2010 (claim #8 in case #09-39318 which is duplicative of claim #14 in case #09-39314).  Candies Shipbuilders' proof of claim is facially invalid and contains insufficient supporting documentation.  The Debtors disputes the amount, if any, that is allegedly owed Candies Shipbuilders.

254.    The Trustee objects to claim #8 in case #09-39318 in the amount of $149,297.37 filed by Candies Shipbuilders because it is facially insufficient.  The claim is for "Sapphire Modifications."  No indication of what modifications were made to the DMT Sapphire appears in the claim, no invoices reflecting an amount due and owing to Candies Shipbuilders from DMT is in the claim, and no contract for modifications to the DMT Sapphire is in the claim.

255.    Under Fifth Circuit law, an insider cannot hold a maritime lien.  *See Sasportes v. Sol de Copacabana*, 581 F.2d 1204 (5th Cir. 1978).  As a result, Candies Shipbuilders cannot seek the protection of a maritime lien due to its insider status.

256.    If a contract exists, it is void and unenforceable as it was the result of a breach of fiduciary duty as set forth herein.

257.    The Trustee requests that this claim be disallowed in its entirety.

     **G.**       **TWELFTH OBJECTION TO ALL INSIDER PROOFS OF CLAIM**

258.    As set forth above, property is recoverable from Defendants under 11 U.S.C. § 550 and Defendants are transferees of transfers avoidable under 11 U.S.C. § 547, 548, and 544. Defendants have not paid amounts owed or turned over property for which Defendants are liable to Deep Marine or the Trustee.  Pursuant to 11 U.S.C. § 502(d), all of the Defendants' claims must be disallowed.  The Trustee requests that all claims filed by the Defendants be disallowed.

## VIII.   PRAYER

WHEREFORE PREMISES CONSIDERED, the Trustee requests that the Court:

(a) avoid, subordinate, recharacherize and invalidate the insider liens and obligations;

(b) recover the avoidable insider transfers;

(c) sustain the Trustee's objections to insiders' proofs of claim;

(d) grant damages as set forth in all of the related causes of action;

(e) grant punitive damages;

(f) grant reasonable and necessary attorneys' fees and expenses

(g) award pre-judgment and post-judgment interest and award costs in facor of the Trustee; and

(h) grant the Trustee all other relief, in law or in equity, to which the he shows himself justly entitled.


DATED: July 16, 2010.

Respectfully submitted,

MCKOOL SMITH P.C.


By:_____/s/ Hugh M. Ray, III_____
            HUGH M. RAY, III
            State Bar No. 24004246
            MARK L. MATHIE
            State Bar No. 13191550
            600 Travis, Suite 7000
            Houston, Texas 77002
            Telephone: (713) 485-7300
            Facsimile: (713) 485-7344

ATTORNEYS FOR JOHN BITTNER, TRUSTEE
OF THE DEEP MARINE LIQUIDATING TRUST

Dallas 305754v2