FF

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

------------------------------------------------X
FLI DEEP MARINE LLC, BRESSNER PARTNERS, LTD.,
LOGAN LANGBERG and HARLEY LANGBERG,

                Plaintiffs,

-against-                            Civil Action No.

PAUL MCKIM, B.J. THOMAS, DANIEL ERICKSON,
FRANCIS WADE ABADIE, OTTO CANDIES, JR., OTTO
CANDIES, III, EUGENE DePALMA, LARRY LENIG, JOHN
ELLINGBOE, BRUCE GILMAN, JOHN HUDGENS,
NASSER KAZEMINY, DCC VENTURES, LLC,
NJK HOLDINGS CORPORATION, NKOC, INC.,
OTTO CANDIES, LLC, DEEP MARINE HOLDINGS, INC.,
and DEEP MARINE TECHNOLOGY, INC.,

                Defendants.
------------------------------------------------X

## AFFIDAVIT OF KATHERINE B. HARRISON

STATE OF NEW YORK    )
                                ) ss.:
COUNTY OF NEW YORK  )

        Katherine B. Harrison, being duly sworn, deposes and says:

        1.    I am a member of Paduano & Weintraub LLP, counsel to the Plaintiffs FLI Deep Marine LLC ("FLI"), Bressner Partners, Ltd., Logan Langberg and Harley Langberg in this action. I make this affidavit based on my personal knowledge of the facts detailed below.

### Plaintiffs are Former Minority Shareholders Who Tried to Stop Wrongdoing by the Controlling Shareholders

2. Plaintiffs were minority shareholders of approximately 5% of Deep Marine Holdings, Inc. ("Deep Marine Holdings") and its wholly owned subsidiary, Deep Marine Technology, Inc. ("Deep Marine Technology," together "DMT") until DMT's July 11, 2009 short form merger purported to cancel and/or dissolve their shares in DMT.

3. Plaintiffs bring this action to prevent further injury by the controlling shareholders and current and former officers and directors of DMT to Plaintiffs' interests, which are in immediate danger.

4. In or about October of 2008, Plaintiffs learned of serious wrongdoing by the controlling shareholder defendants, Nasser Kazeminy and Otto Candies, Jr. and entities and persons within their control, being perpetrated within DMT that was both injurious to the corporation and Plaintiffs' interests.

### DMT Payments Intended for Senator Norman Coleman's Wife

5. Specifically, Plaintiffs learned that Nasser Kazeminy had used DMT to funnel secret improper payments of at least $75,000 to the wife of his friend Senator Norman Coleman's wife, Laurie Coleman.

### Otto Candies' Self-Dealing Transactions

6. Plaintiffs also learned that Otto Candies, Jr. has used his domination of DMT to engage in self-dealing transactions with DMT that had cost the company millions of dollars in damages and lost revenues.

### Plaintiffs' Shareholder Demand Letter to the DMT Board

7. Plaintiffs immediately wrote to the individuals they believed were on DMT's Board of Directors on October 10, 2008 and asked that the Board pledge by

close of business on October 13, 2008 to undertake and conclude an investigation of Kazeminy/Coleman payments and the Otto Candies' self-dealing transactions and damage. (Plaintiffs' Shareholder Demand Letter is attached as Exh. G to Exh. A to the Complaint.)

**Plaintiffs' Many Requests for Information about DMT and Defendants' Refusals**

8. From that date until the present date, on behalf of the Plaintiffs, we have continued to ask the DMT "Special Committee" as well as counsel for the other Defendants, orally and in writing, for information as to their investigation as well as DMT itself, its business and finances, only to be met with every form of stonewalling imaginable.

**DMT Formed its Bogus "Special Committee"**

9. On October 14, 2008, we received a letter from K.B. Battaglini, Esq. of Greenberg Traurig (attached hereto as <u>Exhibit A</u>) confirming that the Board of Directors of DMT had established a "Special Litigation Committee" (the "Special Committee") which had retained Greenberg Traurig as "special investigatory counsel." The Special Committee refused to provide the names of its members and refused to give any information about its investigation.

10. In response to the October 14, 2008 Special Committee letter, on October 14, 2008, my partner Anthony Paduano wrote a letter to Greenberg Traurig (attached hereto as <u>Exhibit B</u>), again asking for information as to the Kazeminy/Coleman payments and the Otto Candies self-dealing transactions, asking for the names of the members of the Special Committee and asking for some assurance

that DMT and the Special Committee were taking steps to prevent the spoliation of evidence.

## Defendant Kazeminy's Changing Story of the Coleman Payments

11. On October 15, 2008, I received a telephone call from Robert Weinstine of Winthrop & Weinstine, P.A. who stated that he represented NJK Holdings Corporation. Mr. Weinstine was extremely aggressive and unpleasant and threatened to sue Plaintiffs and me personally for the allegations in the Shareholder Demand Letter. With respect to the allegations in the Shareholder Demand Letter about the Kazeminy/Coleman payments, Mr. Weinstine stated:

   a. Senator Coleman's wife was an employee of the Hays insurance company;

   b. The payments to Hays were for insurance; and

   c. Hays was a "co-broker."

12. I also received a letter from Mr. Weinstine dated October 15, 2008 (attached hereto as <u>Exhibit C</u>) stating: "We have thoroughly investigated the allegations raised in your letter which address insurance related issues, our client and the wife of a United States Senator. I want to state categorically that these allegations are specious, completely lacking in merit and defamatory per se."

13. I wrote to Mr. Weinstine the same day to memorialize our telephone conversation. In my letter to him dated October 15, 2008 (attached here to as <u>Exhibit D</u>), I wrote:

> In our telephone conversation earlier today, you stated that the allegations in the Demand Letter concerning your client and DMT's payments to Hays Companies are "baseless and defamatory" because DMT's payments to Hays, where Laurie Coleman works, were for an insurance policy on

which Hays was co-broker. Please provide us with that policy and related documents that show that these payments were legitimate.

14. In response, Mr. Weinstine wrote another letter to me dated October 15, 2008 (attached hereto as <u>Exhibit E</u>) in which he did not dispute my description of our conversation. He refused to provide any documentation of the purported insurance policy that justified the $75,000 payments to the Hays Companies. He also revisited his oral threats to me of litigation: "let me reiterate that any effort to leak this defamatory information in a derivative complaint or otherwise will result in litigation. This is not a threat, it is reality."

15. I wrote again to Mr. Weinstine on October 15, 2008, asking him to provide the purported insurance policy, the application, binder and co-brokerage agreement. (My letter is attached hereto as <u>Exhibit F</u>.) We did not receive any such documentation.

16. I also called Mr. Weinstine's office on or about October 15 or 16, 2008 and left a voicemail message for him, asking him if he would participate in a telephone conference to discuss these issues with us.

17. I received a letter from Mr. Weinstine dated October 16, 2008 (attached hereto as <u>Exhibit G</u>) in which he flatly refused to discuss these issues with us and refused to provide us with any evidence of the purported insurance agreement that supposedly supported the $75,000 Kazeminy/Coleman payments.

18. To date, Plaintiffs have received no evidence of any such "co-brokerage" arrangement referred to by Mr. Weinstine. Further, we believe that Defendants have now dropped that defense altogether, moving to an explanation of the Kazeminy/Coleman payments as part of an insurance "consultation" agreement

5

between DMT and Hays – something very different from a "co-brokerage" commission on the sale of an insurance policy.

### The Special Committee's Refusal to Provide ANY Information

19. Also on October 16, 2008, we received a letter from Greenberg Traurig attorney K.B. Battaglini dated October 16, 2008 (attached hereto as <u>Exhibit H</u>) purporting to respond to Anthony Paduano's request for information from DMT and/or the Special Committee as to the allegations raised in the Shareholder Demand Letter. Mr. Battaglini's letter provided no information at all.

20. Attached as <u>Exhibit I</u> hereto is a letter dated October 21, 2008 from Mr. Battaglini on behalf of DMT's "Special Committee" providing the names of the two members of the "Special Committee" – DMT consultant, Chairman and CEO Bruce Gilman, who admittedly receives a salary from the company, and Director Larry Lenig, also compensated by DMT. The letter also stated that Gilman and Lenig were the only remaining directors of DMT except for Paul McKim, who had already been forced out as CEO of DMT. The letter made clear that the two remaining directors controlling DMT, Gilman and Lenig, were the two directors on the "Special Committee" and also confirmed that DMT had no intention of using truly independent directors to staff its special committee for purposes of investigating the alleged wrongdoing of the DMT shareholders and directors and officers.

21. On October 21, 2008, I wrote again to Mr. Battaglini to ask the Special Committee for information about its investigation into the allegations contained in the October 10, 2008 Shareholder Demand Letter. My October 21, 2008 letter is attached hereto as <u>Exhibit J</u>. I also asked for information concerning: the corporate

governance of DMT including the dates of Board members' election or placement on the DMT Board of Directors; actions being taken to preserve evidence; and the Committee's interviews with Nasser Kazeminy, Otto Candies and/or any of their representatives.

22. Neither DMT nor the Special Committee would provide any information as to the Special Committee's investigation – its progress, scope, witnesses, documents, expected duration or substance. And, every request for information was met either by accusations that Plaintiffs were somehow delaying the process by asking for information or by threats of litigation. (See Exhibits H and I)

**Plaintiffs Filed Their Derivative Action**

23. Thus, with no other avenue of relief or even information, on November 3, 2008, Plaintiffs filed their derivative action, FLI Deep Marine LLC, et al. v. McKim et al., C.A. No. 4138-VCN (Del. Ch.). (The Derivative Complaint is attached to the Complaint as Exh. A.)

**More Stonewalling by the DMT Special Committee**

24. Attached as Exhibit K hereto is a letter dated February 2, 2009 from K.B. Battaglini of Greenberg Traurig in which Mr. Battaglini stated that the Derivative Action was a "distraction to, and has had a chilling effect on, the investigation." He also stated that Plaintiffs' discovery requests to DMT and the Special Committee sought to invade the "attorney-client relationship between the Special Litigation Committee and its counsel, and seek the fruits of its investigation."

25. On that basis, the Special Committee refused any cooperation at all and refused to provide the Plaintiffs, still minority investors in DMT at that point, with any discovery, formal or informal, or any information at all about DMT.

7

26. Mr. Battaglini's letter also contained what became very typical: false accusations by the Special Committee that the Plaintiffs had failed to cooperate or provide evidence, even though Plaintiffs had identified the documentation in the exhibits to the Derivative Complaint many times.

27. I responded to Mr. Battaglini's letter in my letter dated February 17, 2009 to him (attached hereto as Exhibit L).

28. After the Special Committee's many representations in its briefs and in Court in the Derivative Action that it needed time and protection from discovery in order to conduct its investigation (Compl. Exh. K), this Court granted the Defendants' Motion to Dismiss the Derivative Action without prejudice to allow the Special Committee to complete its investigation. FLI Deep Marine LLC, et al. v. McKim et al., C.A. No. 4138-VCN (Del. Ch. April 21, 2009) (The Court's Order is attached hereto as Exhibit M.)

29. As of mid-April 2009, the Special Committee purportedly had been investigating the allegations of wrongdoing in the DMT Shareholder Demand Letter for more than six months, yet Plaintiffs had heard nothing from the Special Committee. On April 22, 2009, I wrote a letter to Mr. Battaglini (attached hereto as Exhibit N) to ask for information about the Special Committee's investigation.

30. Mr. Battaglini's response letter of May 12, 2009 (attached hereto as Exhibit O) not only did not provide any information about DMT or the Special Committee's investigation, his letter stated that the mere request for information was "in defiance" of the Court's April 21st Order. Again, the Special Committee's constant posture was that its "investigation" was of paramount importance; it could not be

distracted by even a letter request for information. Also, Mr. Battaglini's letter made reference to the "report of the Special Litigation Committee" which was supposedly in progress.

31. On May 15, 2009, I wrote to Mr. Battaglini to respond to his accusations and to confirm the Special Committee's refusal to provide any of the material Plaintiffs had requested. (My letter is attached hereto as Exhibit P.) I clarified again the documentary evidence of which Plaintiffs were aware concerning the wrongdoing at DMT by describing each document individually. I also offered two representatives of Plaintiff FLI for telephonic interview by the Special Committee.

### The Special Committee Interview of FLI Representatives in May 2009

32. On May 29, 2009, counsel for the Special Committee, K.B. Battaglini and John S. (Chip) Rainey, of Greenberg Traurig, interviewed Robert D. Rosenthal and Bruce A. Siegel, representatives of FLI, in my presence by telephone.

33. In the course of that interview, the FLI representatives made clear that at a meeting at FLI's offices in April 2008 at which Paul McKim, John Hudgens and Bruce Gilman (currently the CEO and half of the Special Committee) were present, Paul McKim detailed the problems that the Otto Candies self-dealing transactions were causing the company – the overcharges that DMT was paying for vessels and the substandard condition in which Otto Candies was delivering vessels to DMT. Mr. Rosenthal reported to the Special Committee counsel at the May 29, 2009 interview that at that April 2008 meeting, when Mr. McKim described Otto Candies' keeping the Emerald in dry dock for more than four months, costing DMT millions of dollars in

9

damages and lost revenues, Bruce Gilman remarked that four months in dry dock was "unprecedented" in their industry.

34. At the end of the May 29, 2009 interview of the FLI representatives, the Special Committee counsel stated that Hays representatives had admitted to them that Hays provided no services to DMT in exchange for the $75,000 Hays received.

**The May 27, 2009 Letter from Chairman Gilman**

35. Attached hereto as Exhibit Q is a letter dated May 27, 2009 from Bruce Gilman, Chairman of DMT to DMT shareholders. That letter states that DMT is "in a critical situation with regard to cash flow and liquidity." The letter contains nothing about the Special Committee or DMT's planned merger.

**DMT's Bylaws**

36. Attached hereto as Exhibit R are the DMT Bylaws.

### CONCLUSION

37. For the reasons given above, in the Verified Complaint and in the accompanying memorandum of law, the Court should grant Plaintiffs' motion for a temporary restraining order and expedited discovery in aid of a preliminary injunction hearing.

*/s/ Katherine B. Harrison*
KATHERINE B. HARRISON

Sworn to before me this
26th day of October 2009

*/s/ Leonard Weintraub*
Notary Public

LEONARD WEINTRAUB
Notary Public, State Of New York
02WE5053745
Qualified in New York County
Commission Expires Feb. 6, 2010