**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **DEEP MARINE HOLDINGS, INC., et al.** | § | **CASE NO. 09-39313-H1-11** |
| | § | **(Chapter 11)** |
| **Debtor** | § | **(Consolidated)** |

---

| | | |
|---|---|---|
| **JOHN BITTNER, LIQUIDATING** | § | |
| **TRUSTEE,** | § | |
| **Plaintiff,** | § | |
| h | § | |
| **V.** | § | **ADVERSARY NO. 10-3312** |
| | § | |
| **NASSER KAZEMINY, NJK HOLDING** | § | |
| **CORP., DCC VENTURES, LLC, OTTO** | § | |
| **B., CANDIES, JR., OTTO B. CANDIES,** | § | |
| **III, OTTO CANDIES, LLC AND** | § | |
| **CANDIES SHIPBUILDERS,** | § | |
| **Defendants,** | § | |
| | § | |
| **- and -** | § | |
| | § | |
| **DEEP MARINE HOLDINGS, INC. AND** | § | |
| **DEEP MARINE TECHNOLOGIES,** | § | |
| **INC.,** | § | |
| **Nominal Defendants/Debtors** | § | |

**MOTION OF DEFENDANTS TO DISMISS COMPLAINT AND/OR STRIKE**
**PLEADINGS AS SANCTION FOR VIOLATION OF FED. R. BANKR. P. 9011**
**AND FOR IMPOSITION OF MONETARY SANCTIONS**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

COMES NOW Nasser Kazeminy, NJK Holding Corp. and DCC Ventures, LLC
(collectively, the "Kazeminy Defendants"), and Otto Candies, Jr., Otto Candies, III, Otto
Candies, LLC and Candies Shipbuilders, LLC (collectively, the "Candies Defendants") (the
Kazeminy Defendants and the Candies Defendants shall be collectively referred to as
"Defendants"), by and through their attorneys, and for their Motion to Dismiss Complaint and/or

Strike Pleadings for Violation of Fed. R. Bankr. P. 9011 and for Imposition of Monetary Sanctions (the "Motion"), would respectfully show the Court as follows:

## Jurisdiction and Venue

1.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of this action is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Sought

2.     It is the Defendants' position that the Complaint (the "Complaint") in this Adversary Proceeding was, in light of all the circumstances, filed without reasonable factual investigation and in bad faith.  Accordingly the Complaint should be dismissed (or in the alternative, that offending portions thereof be stricken) for violation of Fed R. Bankr. P. 9011 "Rule 9011"), and that the Court impose monetary sanctions pursuant to (a) Rule 9011, (b) 28 U.S.C. § 1927 and/or (c) this Court's inherent power to police litigation commenced in this Court.

## Factual Background

3.     The Debtors were in the business of providing subsea services for the offshore oil and gas industry. The Debtors offered remote operated vehicles, subsea construction and field development works, deepwater intervention tasks and inspection and repair services.

4.     The jointly-administered main cases were filed by the Debtors on December 4, 2009.  The Debtors' joint plan of reorganization was confirmed by Order entered on June 2, 2010, and became effective on July 9, 2010.

5.     The Defendants are the largest creditors in the cases, holding both secured and unsecured claims.  Additionally, over a period of years, the Defendants became the largest and,

at the time of the filing of the cases, the sole shareholders of Deep Marine Holdings, Inc. ("DMH"), the parent company of the other Debtors.

<u>The Trust and the Complaint</u>

6.     The Plan provided for the creation of a Liquidating Trust (the "Trust"), of which John Bittner (the "Trustee"), who had served prior to confirmation as the Debtors' chief restructuring officer, was designated as the Liquidating Trustee.   On the Effective Date of the Plan, the assets of the Debtors, including the proceeds of sale of their principal assets and potential avoidance actions and other causes of action, were transferred to the Trust.

7.     On July 16, 2010, the Trustee commenced this Adversary Proceeding, seeking to avoid various payments and transfers to the Defendants, to recharacterize debt held by the Defendants as equity and to equitably subordinate the claims of the Defendants to those of all other creditors in the cases (collectively, the "Bankruptcy Claims").   The Complaint further seeks to recover damages and invalidate interests of the Defendants under various state law causes of action (the "Related Claims").   Additionally, the Complaint encompasses objections to the Defendants' numerous proofs of claim, predicated either on claims identical to the Related Claims or pursuant to 11 U.S.C. § 502(d).

<u>The Shareholder Demand, the SLC Report and the Delaware and Texas Actions</u>

8.     The factual bases of the Related Claims are virtually identical to those claims asserted in a demand letter (the "Demand Letter"), dated October 10, 2008, that was sent to the Board of Directors of DMH on behalf of a number of minority shareholders, who would later be listed as Plaintiffs in the Verified Complaint captioned *FLI Deep Marine LLC and Bressner Partners Ltd. v. McKim, et al.*, Civil Action No. 4138-VCN, State of Delaware, Court of Chancery (the "Delaware Action").

3

9.     On receiving the Demand Letter, the Board appointed a Special Litigation Committee (the "SLC"), composed of independent directors of DMH to investigate the allegations and provide a recommendation to the Board regarding the response to the demand to pursue the claims described in the Demand Letter.

10.     The SLC immediately retained the firm of Greenberg Traurig, LLP ("GT") to investigate the claims in the Demand Letter.  GT conducted the investigation as requested, interviewing twenty-four witnesses (some of whose testimony was sworn, having been compelled by court order) and reviewing thousands of pages of documents.

11.     In the interim period, while GT was conducting its investigation, the Delaware Action was commenced.  Additionally, Paul McKim ("McKim"), the former CEO of DMT, filed a Petition captioned *McKim v. Kazeminy, et al.*, Civil Action 2008-64385, State of Texas, Harris County District Court, 129th Judicial District (the "Texas Action").  The Texas Action was based on nearly identical allegations to those found in the Demand Letter and the Delaware Action.

12.     Following an eight-month investigation, GT submitted a comprehensive report (the "SLC Report") which, in essence, "debunked" the claims asserted in the Demand Letter, the Texas Action, and the Delaware action and (a) concluded that it was not in the best interest of the Debtors to pursue any claims on behalf of the company (or companies) against Defendants, as Defendants were not guilty of any wrongdoing; and, (b) the only party associated with the Debtors that was guilty of actionable wrongdoing was McKim for various claims of malfeasance in connection with his activities with the Debtors.

13.     The SLC adopted GT's recommendations and conclusions. Subsequently, the Board of DMH and DMT adopted the SLC's recommendations and conclusions. Thus, the conclusions reached by GT became the official conclusions and decisions of the Company.  As

such, the Board's decision not to bring the Related Claims is entitled to business judgment rule deference.  *See Zapata v. Maldonado*, 430 A.2d 779, 784 (Del. 1981).

14.    In response to the issuance of the SLC Report, the defendants in the Texas Action sought dismissal of the suit.  On August 14, 2009, the judge presiding in the Texas Action dismissed the derivative claims with prejudice, finding, among other things[1], that "[t]he SLC lawfully assumed control of the derivative proceedings, and determined in good faith, after conducting a reasonable inquiry based on the factors the SLC considered appropriate under the circumstances, that the continuation of the action would be detrimental and not in the best interest of DMH and [Deep Marine Technologies, Inc., one of the Debtors and a nominal defendant in this Adversary Proceeding]."  The court further noted that the dismissal constituted an adjudication on the merits as "the SLC lawfully assumed control of derivative proceedings, concluded its investigation, and as a result moved to dismiss."[2]

15.    The SLC further concluded that sanctions were warranted against McKim for his bad-faith and frivolous filing of the Texas Action.  Indeed, the Debtors, as well as Defendants, were in the process of pursuing an award of sanctions against McKim when the Debtors filed for bankruptcy and had to stay the proceedings.

---

[1]    The judge presiding in the Texas Action did find that the plaintiff in that action was without standing to assert the derivative claims, but specifically expanded the findings to include the  effect of the statute cited in the following footnote as grounds for dismissal.

[2]    Though not cited in the court's decision, the dismissal was consistent with the requirements of Texas corporate law that provides that the court <u>must</u> dismiss derivative proceeding if an independent group (such as the SLC) "determines in good faith, after conducting a reasonable inquiry and based on factors the . . . group considers appropriate under the circumstances, that continuation of the derivative proceeding is not in the best interests of the corporation."  TEX. BUS. ORG. CODE § 21.558.  As such, the state court implicitly concluded that the SLC Report was "trustworthy."

The Trustee's and His Counsel's Knowledge of the SLC Report

16.     When the bankruptcy cases were filed, the Delaware Action was also stayed.  The Debtors further took the action of filing in this Court an adversary proceeding, docketed as Adv. No. 10-3026 (the "FLI Proceeding"), seeking to enjoin the prosecution of the Delaware Action, as the derivative claims asserted were property of the bankruptcy estates pursuant to the case of *S.I Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142 (5th Cir. 1987).   In the FLI proceeding, the Court has preliminarily enjoined the further prosecution of the claims in Delaware.  The action remains pending on the Court's docket.

17.     On or about January 12, 2010, counsel for Defendants traveled from Minneapolis and New Orleans to meet with various counsel from McKool Smith, then-counsel for the Creditors Committee, to present a summary of DMT's recent history, including the Delaware claimants and McKim's frivolous filings and the negative effect the same had on DMT.  As part of this presentation, Defendant's counsel offered to provide McKool Smith with a copy of the SLC Report, subject to certain restrictions previously placed on the Report's production by Judge Michael Gomez, the judge presiding in the Texas Action.  McKool Smith refused this proposal. Defendant's counsel also agreed to provide McKool Smith with whatever further background history or documentary evidence they required to understand the allegations made in the Delaware and Texas actions. Except for minimal follow-up, McKool Smith did not subsequently contact Defendants or their counsel regarding the SLC Report.

18.     In the FLI Proceeding, the Delaware claimants sought production of the SLC Report.  In response to the request, the Trustee (then in his capacity as the chief restructuring

officer of the Debtors) resisted production, asserting that the SLC Report was exclusively the property of the Debtors.[3]

19.     In connection with responding to FLI's demand for production of the SLC Report, the Debtors disclosed that the SLC Report had been shared by the Debtors in its entirety with, among others, McKool Smith under a confidentiality agreement and joint defense/prosecution agreement. See Debtor's Supplemental Statement of Recipients of Special Litigation Committee Report, Adv.No. 10.3026, Docket No. 106 (May 7, 2010). McKool Smith is now representing the Trustee in this Adversary Proceeding.

The Complaint and the "Safe Harbor" Letter

20.     Notwithstanding their shared familiarity with the SLC Report and having had full access to the Report since virtually the petition date of the main cases, the Trustee, with the assistance of its counsel herein, has parroted back virtually all of the facts alleged and claims asserted in the Delaware Action and Texas Action in seeking recovery of the Related Claims herein.[4]

21.     Following their review of the Complaint herein, counsel for the Defendants prepared a detailed comparison of the various claims alleged by the Trustee with the SLC Report.  That analysis was provided to the counsel for the Trustee in the form of a "safe harbor"

---

[3]     While the Trustee did, in responding to FLI's production demand, reserve the position regarding the estates' endorsement of the SLC Report pending his own investigation, the Trustee demonstrated familiarity with both the contents of the SLC Report and its findings.  See Plaintiff's Brief in Support of Claim that SLC Report is Protected From Turnover by the Attorney-Client and Work Product Privileges, Adv. No. 10-3026, Docket No. 109 (May 21, 2010).

[4]     In another context (that of contesting the entitlement of GT to a claim for substantial contribution), the Delaware plaintiffs have noted that "[t]he Liquidating Trustee, on behalf of the Estate, has now filed a Complaint and Objection to Defendants' Proof of Claim against those 'former insiders' including Nasser Kazeminy and Otto Candies, Jr., asserting, inter alia, the same causes of action, based on the same facts, as those asserted by the FLI Plaintiffs in the Complaints filed in Delaware Chancery Court."  See Objection Of FLI Deep Marine LLC, Bressner Partners Ltd., Logan Langberg And Harley Langberg To Application Of Greenberg Traurig, LLP For Allowance Of Substantial Contribution Claim, Case No. 09-39313, Docket No. 634, ¶ 13.

letter (the "Safe Harbor Letter") dated October 26, 2010, a copy of which is attached as **Exhibit "A."** (The Court is urged to review that comparison as detailed support for this Motion.) That letter, as provided in Rule 9011 (c)(1)(A), afforded the Trustee the opportunity to withdraw or amend the Complaint to remove the offending provisions thereof. An advance copy of this motion accompanied the Safe Harbor Letter as mandated by the ruling in *The Cadle Co. v. Pratt*, 524 F. 3d 580 (5th Cir. 2008).

22.     Additionally, significant factual issues addressed by the SLC Report also are ignored in the Trustee's pursuit of some of the Bankruptcy Claims, such as the claims for equitable subordination and claims for recharacterization of the Defendants' claims in the main case, which have at their base claims of inappropriate control of the Debtors' actions on the part of the Defendants, which are matters at the heart of the claims investigated by the SLC. Similarly, the series of objections to claims included within the Complaint are founded in large part either on (i) factual assertions addressed and found groundless in the SLC Report or (ii) assert the requirement of claim disallowance based on the failure to disgorge funds or property transferred pursuant to avoidance actions pursuant to 11 U.S.C. § 502(d). Because of the "infection" underlying the Bankruptcy Claims and the claim objections, the same should be addressed (and stricken) by this Motion as well.

23.     The Trustee did not withdraw or amend the Complaint before the expiration of the safe-harbor period provided in Rule 9011 (c)(1)(A)

## Argument and Authorities

Sanctions Under Rule 9011

24.     A court may impose sanctions if it finds a violation of any one of the four subdivisions of Bankruptcy Rule 9011(b). Fed. R. Bankr. P. 9011(c). Bankruptcy Rule 9011(b)

provides that by filing documents with the court, a party or their counsel represents that to the best of that person's knowledge, information and belief, formed after a reasonable inquiry under the circumstances, such document is not presented (i) for any improper purpose, (ii) based upon frivolous legal arguments, (iii) without adequate evidentiary support for its allegations, and (iv) without a basis for denials of fact. *See* Fed. R. Bankr. P. 9011(b)(1)-(4). Bankruptcy Rule 9011 has a subjective component and an objective component, *In re General Homes Corp.*, 181 B.R. 870, 880-881 (Bankr. S.D. Tex. 1994). Filing a paper for improper purposes is judged on a subjective basis and whether an attorney made a reasonable inquiry into the factual and legal basis of the filing is judged by an objective standard. *Id.*

25.     Bankruptcy Rule 9011(b)(1) prohibits the filing of a pleading for an improper purpose regardless of whether it is supported by law or fact. *Id.* Bankruptcy Rule 9011(b)(2)-(4) requires a party's attorney to perform a reasonable investigation before filing a paper in federal court. *In the Matter of Nair*, 202 Fed.Appx. 765, 766 (5th Cir. 2006) (not selected for publication in the Federal Reporter).

26.     The "improper purpose clause," under Bankruptcy Rule 9011(b)(1) is directed at abusive litigation practices and encompasses papers filed to cause unnecessary delay, to increase litigation costs, or filed to harass. *See In re General Homes Corp.,* 181 B.R. at 880. In order to determine whether a filing was made for an improper purpose, a court must look to objectively ascertainable circumstances that support an inference that the non-movant's purpose for filing a paper was improper within the meaning of Bankruptcy Rule 9011(b)(1). *See Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 805 (5th Cir. 2003) (discussing Fed. R. Civ. P. 11); *In re Cauthern,* 152 B.R. 149, 154 (Bankr. S.D. Tex 1993) ("since [Fed. R. Civ. P.] 11 and [Fed. R. Bankr. P.] 9011 are substantially similar, cases interpreting Rule 11 guide the court in

application of Rule 9011"); *In re Pratt,* 524 F.3d. 580, 587 (5th Cir. 2008) (Fed. R. Bankr. P. 9011 is substantially similar to Fed. R. Civ. P. 11). A paper interposed for any improper purpose is sanctionable whether or not it is supported by the facts and the law. *In re General Homes Corp.,* 181 B.R. at 880.

27.     With respect to whether an attorney has filed a frivolous paper, the relevant inquiry has two prongs: (i) whether the attorney made a reasonable inquiry into the facts and (ii) whether the attorney made a reasonable investigation of the law prior to filing. *See Id.* at 881. Courts must be able to rely on counsel to put forth only factual contentions that have evidentiary support and arguments that are warranted by existing law. *In re Nair*, 320 B.R. 119, 129 (Bankr. S.D. Tex. 2004). Good faith alone is not enough to comply with the frivolousness clauses of Bankruptcy Rule 9011. *Childs v. State Farm Mut. Auto Ins. Co.*, 29 F.3d 1018, 1024 (5th Cir. 1994) (discussing Fed. R. Civ. P. 11). Indeed, "Rule 9011 requires counsel to conduct an adequate inquiry into both the law and the facts before advancing a particular position." *In re Allen,* No. 06-60121, 2007 WL 115182, at *6 (Bankr. S.D. Tex. Jan. 9, 2007).

28.     In making the determination of whether a reasonable inquiry was made with respect to the facts of a case, courts must consider five factors: (1) whether the signer of the document had sufficient time for investigation; (2) the extent to which the attorney had to rely on the client for the factual foundation underlying the pleading; (3) whether the case was accepted from another attorney; (4) the complexity of the facts and the attorney's ability to perform a sufficient pre-filing investigation; and (5) whether discovery would have been beneficial to the development of the underlying facts. *Thomas v. Capital Sec. Services, Inc.*, 812 F.2d 984, 988 (5th Cir. 1987) (discussing Fed. R. Civ. P. 11).  In sum, the investigation of the facts must have been reasonable under the particular circumstances of the case. *Cash-N-Advance*

*v. Dansereau,* 64 Fed.Appx. 417, 417 (5th Cir. 2003) (not selected for publication in the Federal Reporter). A pleading is well-grounded in fact if it has some reasonable basis in fact. *Home Savs. Ass'n of Kansas City, F.A. v. Woodstock Assocs. I, Inc.*, 121 B.R. 238, 242 (Bankr. N.D. Ill. 1990). On the other hand, a pleading is not well-grounded in fact if it is contradicted by uncontroverted evidence that was or should have been known by the attorney signing the document. *Id.* All of these factors have been considered here.

29.    The Fifth Circuit has continually held that courts must strictly comply with the Rule 11 (or in this case, the Rule 9011) twenty-one day safe harbor provision. *In re Pratt,* 524 F.3d. at 588. The "safe harbor" provision in Bankruptcy Rule 9011(c)(1)(A) is a mandatory procedural prerequisite and sanctions imposed without compliance are improper. *In re Barnett Marine, Inc.,* 269 Fed.Appx. at 536. The purpose of the requirement is to give the offending party the opportunity, within twenty-one days after service of the motions for sanctions, to withdraw or correct the offending pleading in order to avoid the imposition of sanctions. *In re Rollings,* No. 04-31511-H3-7, 2008 WL 899300, at *5 (Bankr. S.D. Tex. March 31, 2008). This provision "serves the laudable purpose of requiring litigants to dispose of frivolous claims without judicial involvement." *Troost v. Kitchin*, 327 B.R. 337, 361 (Bankr. N.D. Ill. 2005). Rule 11(c) was designed to ensure due process and give the potentially offending party the opportunity to withdraw papers that violate Rule 11. *In re Pratt*, 524 F.3d. at 587.

30.    The defendants are fully aware that the sanction of dismissal for violation of Rule 9011 is not one readily granted, as the Fifth Circuit has noted, in a case involving dismissal under Fed R. Civ. P. 37, "[T]he law favors the resolution of legal claims on the merits, *In re Dierschke,* 975 F.2d 181, 183 (5th Cir.1992), and because dismissal is a severe sanction that implicates due process, *Brinkmann v. Abner,* 813 F.2d 744, 749 (5th Cir.1987), we have

previously deemed dismissal with prejudice to be a 'draconian remedy' and a 'remedy of last resort.' *Batson v. Neal Spelce Associates, Inc.,* 765 F.2d 511, 515 (5th Cir.1985)." *FDIC v. Conner*, 20 F.3d 1376, 1380 (5th Cir. 1994). Nevertheless, when the Court considers the circumstances surrounding the Trust's failure to conduct any meaningful investigation of the facts underlying the serious allegations made against the Defendants in this adversary proceeding, it will be plain that (i) the filing of the complaint meets the standard of frivolousness that Rule 9011 was intended to address and (ii) the pervasiveness of the unfounded allegations so infects the Complaint, including the objections to claims included therein, that dismissal of the Complaint is the appropriate sanction in this case. To impose this sanction would serve the dual purpose underlying the use of sanctions by the Court "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League, et al. v. Metropolitan Hockey Club, Inc., et al.*, 427 U.S. 639, 643 (1976).

The Trustee's "Investigation"

31.     As previously stated, the Trustee and his counsel, despite being required to act in the best interests of the estate and its creditors, have realleged many of the same allegations and causes of action that the SLC and GT found were meritless and were not in the Debtor's best interest to pursue. The Trustee re-urges these allegations despite the conclusion by the court in the Texas Action that "the SLC lawfully assumed control of derivative proceedings, concluded its investigation, and as a result moved to dismiss," and thus, that a dismissal of the derivative proceeding was appropriate. That Court expressly stated that its decision to dismiss the claims was "an adjudication on the merits …." Aug. 14, 2009 Order, n.1.[5]

---

[5]     The dismissal order is included as an exhibit to the Rule 11 Letter attached as **Exhibit "A."**

32.     In deciding whether a special litigation committee's report and recommendation that the pursuit of the claims is not in the company's interest should be granted deference, a court's inquiry is whether the SLC (i) is independent and disinterested; (ii) has made its determination in good faith; and (iii) has conducted a reasonable inquiry, based on factors appropriate in the circumstances.  *See* TEX. BUS. ORG. CODE § 21.558 (2010); *see also* Josh Roseman, *Discovery Issues Arising From a Special Litigation Committee's Decision to Recommend Dismissal of a Shareholder Derivative Lawsuit*, Texas Business Litigation 28 (Summer 2002).

33.     One of the "indicia of good faith and reasonableness of [an SLC's] investigation is the use of capable counsel."  *Grafman v. Century Broad. Corp.*, 762 F.Supp. 215, 220 (N.D. Ill. 1991) (citing *Kaplan v. Wyatt*, 499 A.2d 1184, 1190 (Del. 1985)).   There can be little question that the SLC's counsel was capable of undertaking its investigation.  K.B. Battaglini and John "Chip" Rainey, two well-respected partners in GT and experienced attorneys, led the investigation, which included 24 witness interviews and the review of thousands of documents.  *See Strougo v. Bassini*, 112 F.Supp.2d 355 (S.D.N.Y. 2000) (finding that SLC's 11 witness interviews established the reasonableness of the investigation).  Evidencing their thorough and trustworthy investigation in the instant matter, the SLC and GT also drafted an exhaustive 400-page report that summarized their findings.  *See Thompson v. Scientific Atlanta, Inc.*, 621 S.E.2d 796, 798 (Ga. App. 2005) (noting that a detailed report is also a characteristic that supports following a finding that the SLC thoroughly investigated a claim).

34.     At the conclusion of its investigation, the SLC concluded that:

- "[w]ith the exception of certain conduct of McKim, Special Counsel found no fraudulent activities or funds wrongfully diverted from the Company.  ….

13

- "With the exception of certain conduct of McKim, the investigation has not revealed facts or circumstances warranting the initiation of a lawsuit to recover funds from any current or former director, officer, or shareholder,…"

SLC Report, p. 53.[6]

- "[w]ith the exception of certain conduct of McKim, Special Counsel found no fraudulent activities or funds wrongfully diverted from the Company.…

- "With the exception of certain conduct of McKim, the investigation has not revealed facts or circumstances warranting the initiation of a lawsuit to recover funds from any current or former director, officer, or shareholder,…"

- "there is no evidence that DMT has been looted (i.e. plundered) either for the personal gain of the Controlling Shareholders [defendants Otto Candies, Jr. and Nasser Kazeminy], or to the detriment of the minority stockholders, nor any evidence that there was concerted action between two or more groups of shareholders to cause waste, mismanagement or the wrongful diversion of corporate assets or opportunity.…

- "There is no evidence that Defendants acted jointly or collectively to cause millions of dollars of damage to DMT or to impair [minority shareholders] interests in DMT.…

- "However, there is evidence of individual actions by Defendant Paul McKim, with specific regard to the acquisition of remotely operated vehicles and submarines, that did not result from prudent business planning, that contributed to

---

[6]     In the Texas Action, DMT and the SLC brought a motion to recover the cost of its investigation because it deemed the Texas Action was meritless and brought in bad faith.

financial losses for DMT, and that necessitated capital funding through the exchange of equity that diluted shareholder value,"

Appendix A of SLC Report at 6.

The SLC hence concluded that it was not in DMT's interest to pursue any action against Defendants.  SLC Report at pp. 5-6.  Subsequently, the Board of DMH and DMT adopted the SLC's recommendations and conclusions. Thus, the conclusions reached by GT became the official conclusions and decisions of the Company.  As such, the Board's decision not to bring the Related Claims is entitled to business judgment rule deference.  *See Zapata v. Maldonado*, 430 A.2d 779, 784 (Del. 1981).

35.     Nevertheless, the Trustee and his counsel brought the current action despite (i) the SLC's thorough investigation(which had already cost the Debtors approximately $1 million), (ii) the SLC's conclusion that there was no wrongdoing committed on the part of the Defendants, (iii) the SLC's conclusion that it was not in DMT's best interests to pursue the claims against Defendants and (iv) Judge Gomez's previously cited Order.

36.     If the Trustee and his counsel were to elect to totally ignore the findings of the SLC in bringing the Complaint, they should be able to demonstrate that a comparable investigation had been conducted.  However, based on the Defendants' review of the information available to it as to the nature and scope of the investigation that was conducted, it appears that the Defendants' demand for dismissal in the Safe Harbor Letter is well founded.

37.     This information consists of statements made by counsel for the Trustee and, more importantly, the fee statements filed by the Trustee and his counsel on August 20 (and subsequently supplemented).  In those statements, it has been represented that:

a. The allegations made in the Complaint are, in a document developed by counsel for the Trustee in the course of preparation of the Complaint, tied to specific testimonial allegations *taken from the deposition*[7] *of McKim*, the sole party identified as being an appropriate target of the claims investigated by the SLC;

b. The Trustee and his counsel did not interview any of the other 23 witnesses from whom statements were taken by the counsel for the SLC, which witnesses had effectively refuted the claims asserted by McKim in his deposition;

c. The Trustee and his counsel made no effort to conduct a discussion with the GT counsel, who office in Houston and Austin, as to any aspect of the investigation they had undertaken or the facts that they had turned up in the course of that investigation;

d. The only counsel with whom the Trustee or his counsel did consult was the counsel for McKim.  In fact, though heavily relying on the testimony of McKim, taken from his deposition, no in person interview of McKim appears to have been conducted.

e. Though having spent time for which more than $325,000[8] is sought to be paid from the Debtors in this case for their "investigation," the description of the services for which payment is sought, to put it charitably, ranges from murky to opaque.  As a prime example, one partner at McKool Smith, Mark Mathie, billed

---

[7]         It should be noted that, of the 24 witnesses interviewed by the SLC, 22 were conducted voluntarily.  Those of McKim and B.J. Thomas, the former CFO who had been dismissed by the Debtors, had to be compelled by subpoena.  This was so even though McKim was a named plaintiff in the Texas Action and identified as the "confidential source" of the information provided gratuitously to the Delaware plaintiffs.  Thomas's deposition testimony contradicted that given by McKim in many material respects.  No mention was made of the Trust's reliance on the Thomas deposition transcript in their investigation.

[8]         This amount is independent of additional fees and expenses invoiced to the Trust for the balance of the month of July, 2010, totaling more than $145,000, the details of which have not been disclosed to the Defendants.

time aggregating 231.2 hours, for which hourly compensation at a rate of $540.00, totaling $124,848.00, is sought.  Mr. Mathie's description of his "efforts" all bear the identical time entries of "Review materials related to research on potential claims and research issues relating to potential claims against company insiders."

f.  Most interestingly, the interaction between the Trustee and his counsel in connection with this adversary proceeding – up to a week before the filing of the adversary proceeding, which was the cutoff date for their respective fee applications, was minimal to nonexistent.  There is, for example, no indication that the Trustee spent any time reviewing the Complaint filed in his name.[9] Unless the Trustee and his counsel made the conscious – and most unlikely – decision to not seek compensation for those activities, the reviewer must assume that the activities did not take place.

38.    Apart from the failure of the Trustee and his counsel to conduct a reasonable investigation into the factual or legal basis (or lack of basis) for the Trust's claims, it is also quite clear that this Action is being pursued for an improper purpose—namely, so that (i) the Trust can attempt to bring undue pressure on the Defendants to grant concessions in the bankruptcy, and (ii) the Trustee and his counsel can continue to run up exorbitant bills to be paid from their "captive client," the Trust, fees which an independent client would never be expected to pay. Allowing this litigation to proceed in this Court in the current form will force the Defendants– along with the *other* creditors of this bankruptcy estate –to pay for the prosecution of claims that

---

[9]    To this point, shortly after the filing of the Complaint, in a chance encounter in New Orleans between the Trustee and one of the Defendants, it was represented by the Trustee that none of the matters which were the subject of the SLC Report were included in the allegations in the Complaint and that there were no "real" fraud allegations, only the assertion of claims for recovery of "fraudulent transfers" in bankruptcy, a technical distinction which could be explained to them by the Defendants' counsel.

an independent committee, assisted by independent and competent counsel, have already thoroughly investigated and determined were meritless and not in the Company's best interests to pursue.

### **Request for Relief**

39.    The Defendants accordingly request the Court, on review of the matter described herein and in the "safe harbor" letter:

    a.    Issue sanctions in the form of an Order that Dismisses the Complaint or, alternatively, strike the offending counts corresponding to the matters clearly addressed and rejected by the SLC Report;

    b.    Impose monetary sanctions, jointly and severally, against the Trustee and his counsel herein for urging allegations and claims which, had they in good faith conducted an examination of the underlying facts, should not have been brought, to the great expense of both the Defendants and the creditors of the bankruptcy estate;

    c.    Alternatively, impose monetary sanctions pursuant to 28 U.S.C. § 1927 against counsel for the Trustee for engaging in unreasonable and vexatious litigation in this proceeding; and/or

    d.    Imposing such other sanctions against the Trustee and/or his counsel as may be appropriate within the Court's inherent power to police litigation before it.

Dated:  November 18, 2010

THOMAS S. HENDERSON, Attorney At Law

By: _____ /s/ *Thomas S. Henderson* _____
       Thomas S. Henderson (TBA No. 09432300)

South Tower, Pennzoil Place
711 Louisiana, Suite 3100
Houston, Texas 77002-2716
Telephone: (713) 227-9500
Facsimile:   (713) 620-3023

COUNSEL FOR THE DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading has been served on the attorneys for the

Plaintiff, Hugh M. Ray, III and Paul D. Moak, McKool Smith, 600 Travis, Suite 7000, Houston,

Texas 77002, by ECF filing on the 18th day of November, 2010.

_____ /s/ *Thomas S. Henderson* _____
       Thomas S. Henderson