## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **DEEP MARINE HOLDINGS, INC., et al.** | § | **CASE NO. 09-39313-H1-11** |
| | § | (Chapter 11) |
| Debtor | § | (Consolidated) |

---

| | | |
|---|---|---|
| **JOHN D. BITTNER, LIQUIDATING** | § | |
| **TRUSTEE** | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| V. | § | **ADV. PROC. NO. 10-03312** |
| | § | |
| **NASSER KAZEMINY,** | § | |
| **NJK HOLDING, CORP..** | § | |
| **DCC VENTURES, LLC** | § | |
| **OTTO B. CANDIES, JR.,** | § | |
| **OTTO B. CANDIES, III,** | § | |
| **OTTO CANDIES, LLC, AND** | § | |
| **CANDIES SHIPBUILDERS, LLC** | § | |
| | § | |
| Defendants | § | |

---

| | | |
|---|---|---|
| **GENERAL ELECTRIC CAPITAL** | § | |
| **CORPORATION** | § | |
| Intervening Plaintiff | § | |
| | § | |
| V. | § | |
| | § | |
| **OTTO CANDIES, LLC** | § | |
| Defendant in Intervention | § | |

---

## MOTION OF DEFENDANTS FOR
## SANCTIONS AND DISQUALIFICATION

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

**COME NOW** Nasser Kazeminy, NJK Holding Corp. and DCC Ventures, LLC (collectively, the "Kazeminy Defendants"), and Otto B. Candies, Jr., Otto B. Candies, III, Otto Candies, LLC and Candies Shipbuilders, LLC (collectively, the "Candies Defendants") (the Kazeminy Defendants and the Candies Defendants shall be collectively referred to as "Defendants"), by and through their attorneys, and for their Motion for the Imposition of Sanctions and Disqualification of the Trustee's counsel (the "Motion"), would respectfully show the Court as follows:

### Jurisdiction and Venue

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of this action is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Sought

2.     The Trustee and his attorneys failed to participate in good faith in the mediation held December 14, 2010 (the "Mediation"), pursuant to the Court's Orders.  At a minimum, monetary sanctions should be leveled against the Trustee pursuant to Federal Rule of Civil Procedure 16(f), 28 U.S.C. § 1927, and/or the Court's inherent power to enforce its own orders. Further, the Trustee's counsel violated Texas Rule of Professional Conduct 1.06(b)(2), ABA Model Rule of Professional Conduct 1.7, and 11 U.S.C. § 327(a) when they sought to use the Mediation as leverage against Defendants' Rule 9011 motion.  As a result, the Trustee's counsel should be disqualified from further representation of the Trustee.

## Applicable Law

3.     "Mediation is a process in which the parties must work together, with the assistance of a trained facilitator, to devise a solution to their dispute.  If either side is unwilling to do so, and insists upon being deemed the 'winner' at the end of the process, the mediation will fail."  *In re A.T. Reynolds & Sons, Inc.*, 424 B.R. 76, 85 (Bankr. S.D.N.Y. 2010) (citation omitted).  The Federal Rules of Civil Procedure require that parties who attend a mediation be prepared and participate in good faith.  FED. R. CIV. PROC. 16(f).[1]  If a party violates this rule, the Court "must" order the offending party to pay the other parties' costs of attending the mediation. *Id.  Accord In re A.T. Reynolds & Sons, Inc.*, 424 B.R. at 79 ("When a party fails to participate in mediation in good faith in contravention of a court order, the remedy traditionally is to pay the other parties' costs in attending the conference.").  In addition to costs, the Court may issue any additional sanction, including but not limited to those authorized by Rule 37(b).  *Id.*  The purpose

---

[1]     Federal Rule of Civil Procedure 16 is applicable under Bankruptcy Rule 7016, and Local Rule 16.4 specifically authorizes Federal Rule of Civil Procedure 16 sanctions.

of this rule is to prevent the waste of the assets of the court and the parties on "futile" settlement conferences. *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1334 (5th Cir. 1996).

4.    Whether a party to a mediation participated in good faith is a question of intent. The party seeking sanctions must put forth objective evidence that the "party attended the conference intending not to reach settlement." *Guillory*, 95 F.3d at 1334 n.13.  Pursuant to this rule, numerous cases have allowed sanctions where (1) a mediation attendee was not willing to negotiate at all, *i.e.*, refused to change his settlement position, <u>or</u> (2) the attendee failed to inform the court that he did not intend to participate in settlement negotiations.

5.    For example, in *Guillory*, *supra*, the magistrate judge leveled sanctions against one of the defendants for failing to participate in good faith in a court-ordered settlement conference.  *Guillory*, 95 F.3d at 1325, 1334.  That case involved a personal injury lawsuit, in which the jury ultimately awarded the plaintiff almost seven-million dollars.  *Id*. at 1324-25. Prior to trial, the court ordered the parties to attend a settlement conference, and at that conference, the primary defendant, Deere, tendered a $100,000 offer and refused to negotiate further.  As a result, plaintiff sought sanctions under Rule 16 for failure to participate in good faith.  *Id*.  The district court granted the motion, noting:

> As the settlement conference progressed, it became apparent that Deere [the defendant] did not intend to make any substantial contribution to a settlement fund, and that Deere had never intended to do so.  In fact, Mr. Kraft [Deere's representative] informed the court that Deere had always taken the position that this was a case which they would rather try.  In addition, Deere had never considered settlement a realistic possibility because the present value of plaintiff's workmen's compensation benefits was so large.  In order for the plaintiff to settle, and therefore give up these benefits, the settlement fund would have to be in the millions of dollars.  In order to achieve such a fund, Deere … would … have to make a substantial contribution to the fund. This, Deere had never been prepared to do.

*Id.* at 1334.  In a subsequent memorandum ruling, the district court also emphasized that Deere could have informed the court that settlement was unlikely and that a settlement conference would be pointless, but it failed to do so.  *Id.*  Accordingly, the district court ordered Deere to pay the costs of the other attendees in preparing for and attending the settlement conference.  *Id.* at 1325.  Deere appealed.

6.      The Fifth Circuit <u>affirmed the sanctions</u>, pointing out that "[w]e cannot allow parties to waste the court's dispute resolution assets by pretending to support settlement while never intending to settle the case."  *Id.*  The Court agreed with the magistrate that, taken as a whole, Deere's actions illustrated a pattern of unwillingness to participate in settlement negotiations in good faith.  The Court concluded:

> The district court could infer a lack of good faith from actions and statements made by Deere's representatives.  We find that the record does not demonstrate that the district court sanctioned Deere for failing to make a serious offer, but rather it imposed the sanctions because Deere concealed its true position that it never intended to settle the case.  Deere's <u>refusal to make a settlement offer with a realistic potential of being accepted</u> by the plaintiff confirmed the Deere representative's statements regarding settlement.  Under these circumstances, the imposition of sanctions was <u>well within the court's discretion</u>.

*Id.* at 1334-35 (emphasis supplied).

7.      Numerous cases follow the Fifth Circuit's reasoning in *Guillory* and allow sanctions for failing to negotiate in good faith.  In *In re A.T. Reynolds & Sons, Inc.*, 424 B.R. 76, 78 (Bankr. S.D.N.Y. 2010), the court framed the issue as "whether mere attendance at court-ordered mediation, without active participation in the mediation process, satisfies the requirement to participate in good faith."  The Court held that active participation, including good faith consideration of the litigation risks in adjusting settlement positions, is required.

To begin its analysis, the court pointed out that:

Mediation entails a process, and requires parties to hear each others' points of view and proposed resolutions to the issue underlying the mediation.  Passive attendance at mediation cannot be found to satisfy the meaning of participation in mediation, because mediation requires listening, discussion and analysis among the parties and their counsel.  Adherence to a predetermined resolution, without further discussion or other participation, is irreconcilable with risk analysis, a fundamental practice in mediation.  While it goes without saying that a court may not order parties to settle, this Court has authority to order the parties to participate in the process of mediation, which entails discussion and risk analysis.  Therefore, the Court holds that where a party is ordered to participate in mediation, the party fails to comply with the order when it does not engage in the process of mediation, which entails consideration of the other parties' arguments.

*Id*. at 85-86.

8.      In the case, Wells Fargo was ordered to attend a mediation, but during the mediation, it became clear that Wells Fargo was not willing to negotiate from its predetermined position and that its representative did not have full settlement authority.  *Id*. at 89, 91.  Further, Wells Fargo disrupted the mediation by interrupting the discussion of pertinent issues.  *Id*. at 91.  As a result, the mediator reported to the court that Wells Fargo was in violation of the order that required the parties to attend the mediation and participate in good faith.  *Id*. at 80.

9.      At a hearing on the issue of sanctions, Wells Fargo's primary justification for its behavior was that it was free to adopt a "no-pay" position, but the court dismissed this argument:

Taking a "no-pay" position cannot mean that a party may predetermine that it is not liable, and show up at the mediation and refuse to participate in discussion, or consider any risk or other argument in favor of settlement.  Such a rigid interpretation of "taking a no-pay position" would render mediation futile, and cannot stand in light of the fact that discussion and risk analysis are inherent in mediation, and myriad federal rules permit mediation and provide for penalties for obstructive behavior.

*Id*. at 93.

10.     After reviewing the facts and law, the court ultimately concluded that "attendance without active participation is insufficient to constitute good-faith participation in mediation," *Id*.

at 78.  As a result, Wells Fargo was held in contempt and ordered to pay for the mediation as well as the other parties' costs to prepare for and attend it.  *Id*. at 90, 94.

11.      Numerous other cases have ordered sanctions for failing to attend mediation in good faith.  *See, e.g.*, *Ferrero v. Henderson*, 2003 WL 21796381 (S.D. Ohio 2003) (sanctions leveled against a party who made no offer at mediation and failed to inform the mediator or the other parties that the mediation would be futile); *Fisher v. SmithKline Beecham Corp.*, 2008 WL 4501860 (W.D.N.Y. 2008) (sanctions awarded against party who tendered "token" offer and failed to notify the other parties of a motion for summary judgment it filed the day before mediation); *In re Bank of Louisiana/Kenwin Shops Inc.*, 1999 WL 529532 (E.D. La. 1999) (sanctions warranted for inducing the court to schedule settlement conference on short notice and then failing to participate); *Nick v. Morgan's Foods, Inc.*, 99 F.Supp. 2d 1056, 1063 (E.D. Mo. 2000) *aff'd*, 270 F.3d 590 (8th Cir. 2001) (sanctions warranted for failure to submit mediation memorandum and failing to alert the court that mediation would be pointless); *RLI Ins. Co. v. Choctaw County Pub. Bldg. Auth.*, 2005 WL 2233070 (S.D. Ala. 2005) (bad faith evidenced by failure to make written offer prior to settlement, failure to inform court that settlement conference was futile, and sending representative with little settlement authority); *Sabre Group, Inc. v. European Am. Travel, Inc.*, 192 F.3d 126 (5th Cir. B.A.P. 1999) (sanctions leveled for failing to attend settlement conference); *Scaife v. Associated Air Ctr. Inc.*, 100 F.3d 406, 412 (5th Cir. 1996) (same); *Negron v. Woodhull Hosp.*, 173 F.App'x. 77, 79 (2d Cir. 2006) (failure to bring a principal to mediation violated court order and warranted sanction of costs); *Hughes v. Lillian Golman Family, LLC*, 2000 WL 1228996, *2 (S.D.N.Y. 2000) (sanctions leveled for attending settlement conference unprepared).

**The Trustee and His Counsel Failed to Attend the Mediation in Good Faith.**

12.     Based on the foregoing law, the Trustee and his attorneys should be sanctioned for their actions involving the Mediation.  The Trustee's behavior evidences a pattern of unwillingness to negotiate a settlement at the Mediation in the face of the Court's Order to do so. They also failed to warn the parties that the Mediation would be useless and that their attendance and extensive preparation would be wasted.  Additionally, the Trustee's counsel should be disqualified because they are in violation of the Court's directive and Texas Rule of Professional Conduct 1.06(b)(2) in that they limited their representation of their client and participation in the Mediation by their own interests in defending the Rule 11 Motion against them.

**Events Prior to the Mediation**

13.     Discussion of settlement was first raised at a September 7, 2010 status conference in the *Deep Marine Holdings, Inc. v. FLI Deep Marine, LLC* and *Committee of Unsecured Creditors v. FLI Deep Marine, LLC* adversary proceedings.[2]  Counsel for the liquidating trust advised the Court that the various parties were working toward a "potential resolution."[3]  The Court asked if it should order the parties "to get together for a face-to-face settlement conference ...."[4]  Counsel for the Trust responded:  "We certainly are eventually amenable to face-to-face discussions, but we're trying to lay the groundwork now before we can think about productive face-to-face discussions."[5]  At least twice, Trustee's counsel led the Court to believe that they

---

[2]     Case No. 10-3026-H1-ADV and Case No. 10-3116-H1-ADV, respectively.

[3]     Sept. 7, 2010 Status Conference Transcript at 4, attached hereto as Exhibit 1.

[4]     Sept. 7, 2010 Status Conference Transcript at 5-6, *See* Exhibit 1.

[5]     Sept. 7, 2010 Status Conference Transcript at 6, *See* Exhibit 1.

were interested in a global resolution, including discussing settlement with the Candies and Kazeminy Defendants if not already involved in those discussions.[6]

14.     The Court then stated that "if the case is not settled by October 7th, then I'm going to require a face-to-face meeting to occur between October 7th and the 28th and I'm going to require that each party have a person with full authority to settle the case, subject only to appropriate court approvals, in attendance at the face-to-face meeting."[7]  The Order required that all the parties, including the Candies and Kazeminy Defendants, be included in the settlement meetings/mediation.  The Court stated that the Defendants were "needed for the settlement…."[8]

15.     The substance of this hearing was subsequently reduced to an Order requiring face-to-face settlement discussions if the parties had not settled by October 7, 2010.[9]  The Court, in its September 17 Order, reflected his understanding from the Trustee's counsel that they were in fact already addressing settlement with all parties, including the Candies and Kazeminy Defendants.[10]  The Court, however, was misled by Trustee's counsel with regard to their global settlement efforts.  At that point, neither the Candies nor the Kazeminy Defendants had been contacted about settling the case but inferred from the remarks made by Trustee's counsel that Trustee's counsel would soon be making a proposal to Defendants.

16.     The issue of settlement was also raised in the October 18 hearing on the Candies and Kazeminy Defendants' Rule 9011 Motion in the captioned action.  In that proceeding, counsel for the Kazeminy Defendants stated to the Court that

---

[6]        Sept. 7, 2010 Status Conference Transcript at 4, 7-8, *See* Exhibit 1.

[7]        Sept. 7, 2010 Status Conference Transcript at 9, *See* Exhibit 1.

[8]        Sept. 7, 2010 Status Conference Transcript at 9-10, *See* Exhibit 1.

[9]        Sept. 17, 2010 Abatement Order (Case No. 10-3026, Doc. 117), attached hereto as Exhibit 2.

[10]       *Id.*

[The Defendants] have never, ever been approached with any meaningful settlement approaches. I believe that we need some direction. We've sent letters indicating that our clients would be available before the end of the month when the Court has indicated you wanted it done. It looks as though it's not going to happen. … The McKool Smith firm refuses to have a mediator and says, "All we'll do is: have a face-to-face meeting." … And so I want the record to reflect we've never been approached with any meaningful settlement contrary to whatever anybody has said in this courtroom. … And if we're going to get this done, … I'd respectfully request that the Court would order that a mediator be appointed and that a mediation go forward by a certain date[.][11]

17.     Mr. Mark Mathie, the Trustee's attorney, responded that they had proposed a "very specific settlement track"[12] to the Defendants, and added that the Trustee "did not want a mediator at this time because we do not believe that it will be productive."[13] He went on to state that "[w]e will comply with your order that says there will be a face-to-face meeting between the parties by the end of the month."[14] He eventually conceded that the "very specific track" they suggested to Defendants was to "Go settle with the FLI plaintiffs first…."[15] The Court rejected that approach, "You suggested they settle with the FLI plaintiffs first? … Why? They [the FLI plaintiffs] don't own anything. … No, they [the Candies and Kazeminy Defendants] need to deal with you, not FLI."[16] Mr. Mathie agreed to comply with that instruction, stating, "Okay. All right. Well, we'll take care of it."[17]

---

[11]     Rule 9011 Hearing Transcript at 17-18, attached hereto as Exhibit 3.

[12]     This "very specific settlement track" required Defendants to "assume responsibility for resolving and paying in full any and [sic] allowed claims of the FLI plaintiffs and any other former shareholders." Rule 9011 Hearing Transcript at 30, *See* Exhibit 3.

[13]     Rule 9011 Hearing Transcript at 18, *See* Exhibit 3.

[14]     Rule 9011 Hearing Transcript at 18, *See* Exhibit 3.

[15]     Rule 9011 Hearing Transcript at 22, *See* Exhibit 3.

[16]     Rule 9011 Hearing Transcript at 22, *See* Exhibit 3.

[17]     Rule 9011 Hearing Transcript at 21-22. Mr. Ray denied that they were sending the Defendants to negotiate with FLI, but acknowledged they "need to bring them [Defendants] into a global settlement. … [A]ll parties should sit down and discuss it." *Id.* at 24-25, *See* Exhibit 3.

18.     Later, at the November 18, 2010 Scheduling Conference, Mr. Ray acknowledged that the Trustee and his counsel "agreed to" the Mediation.[18]  He said he wanted all issues mediated and all parties present.[19]  He acknowledged it was set for December 14-15.[20]  In fact, Mr. Ray prepared the first draft of the Order for the Mediation.[21]

19.     Two more events prior to the Mediation led Defendants to believe the Trustee was serious about settlement.  On November 12, 2010, counsel for the Defendants conferred with the Trustee's counsel, at Trustee's counsel's request, to explain Defendants' settlement proposal. After the conference call, which lasted two hours, Trustee's counsel told Defendants that they appreciated Defendants' efforts and got a better understanding of Defendants' detailed settlement proposal.  Trustee's counsel also continually assured Defendants that they would provide a response prior to the Mediation to advance the negotiations.[22]  Not until a few days before the Mediation did they announce that they would *not* be responding before the Mediation.

20.     Finally, the Trustee gave Defendants claims information and financial data as of September 30, 2010, on which Defendants based their settlement proposal.  These numbers were expressly confirmed with the Trustee at the November 12 conference call to assure the Trustee that the Defendants' settlement proposal was based exactly on the Trustee's own September 30 numbers.  Nevertheless, the numbers changed for October and November, but Trustee's counsel did not inform Defendants prior to the Mediation.  At the Mediation, the Trustee used the later numbers which differed from the numbers on which Defendants' settlement offer was based.

---

[18]     Nov. 18, 2010 Scheduling Conference Transcript at 10-11, attached hereto as Exhibit 4.

[19]     Nov. 18, 2010 Scheduling Conference Transcript at 11-16, *See* Exhibit 4.

[20]     Nov. 18, 2010 Scheduling Conference Transcript at 19, *See* Exhibit 4.

[21]     *See* copy of October 19, 2010 e-mail from Mr. Ray (with attached draft Order), attached hereto as Exhibit 5.

[22]     *See*, *e.g.*, Emails from Nov. 22 through Dec. 7, attached hereto as Exhibit 6.

This confused the mediator, made Defendants' proposal more difficult to understand and work from, made Defendants less prepared to be productive, and set discussions back with the mediator.

**The Mediation**

21.     At the conclusion of the Rule 9011 hearing on November 18, the Court issued an order stating that if the Defendants presented the Trustee with a "substantial" offer that was approved by the mediator, the parties would be required to attend a mediation to be held by December 15, 2010.[23]  The Defendants made such an offer, and the Mediation was scheduled for December 14-15, 2010, by agreement of all parties.  While the Mediation Order established that the Mediator would resolve any dispute as to whether the offer was "substantial,"[24] the Trustee and his counsel raised no such dispute.  Clearly, the Defendants' offer was substantial and in very good faith.[25]

22.     The Defendants went through great pains, and expense, to prepare for and attend the Mediation.  Two attorneys traveled to Houston from New Orleans to participate on behalf of the Candies Defendants, and three attorneys for the Kazeminy Defendants traveled to Houston from Minnesota.  Mr. Otto Candies III from Des Allemandes, Louisiana, also personally traveled to Houston and attended the Mediation.  Mr. Nasser Kazeminy and another representative of the Kazeminy Defendants also traveled from Minnesota to Houston and attended the Mediation.

---

[23]     Rule 9011 Hearing Transcript at 26-27, *See* Exhibit 3.  *See also* Order Conditionally Ordering Mediation, attached hereto as Exhibit 7.

[24]     *See* Order Conditionally Ordering Mediation, *See* Exhibit 7.  *See also* Rule 9011 hearing Transcript at 31, *See* Exhibit 3.

[25]     In the pleading filed by the Trustee's counsel January 11, 2011 (Doc. 988), to defend their fees, they characterized the offer as "incoherent."  Doc. 988 p. 14.  That assertion flies in the face of the fact that they determined the offer to be substantial and the fact that they never addressed any question about the substantiality of the offer to the mediator prior to requiring all counsel and Messrs. Kazeminy and Candies to attend the Mediation. If they truly believed that the offer was incoherent and that they could not respond to it, they should have warned all parties and counsel not to waste time and money attending the mediation.

They all attended the Mediation a full day and into the evening December 14, from 9:00 a.m. until approximately 8:30 p.m.  This necessitated that additional days were required for the Defendants' and their attorneys' travel.

23.     Substantial additional time was spent by Defendants' counsel preparing for the Mediation.  The Mediator instructed that the parties were to submit Mediation Position Statements, briefing him and the other parties on the issues.  All Defendants complied.  Because of the multiple issues placed by the Trustee in the case and in order to make the Mediation as productive as possible, the Mediation Statements were extensive.  The Candies' Statement was 45-pages.  The Kazeminy Statement was 9-pages single spaced.  By contrast, the Trustee and his counsel illustrated their contempt for the Mediation process by failing to comply with this instruction.[26]   In fact, Trustee's counsel did not inform Defendants that they would not be submitting the required Mediation Statement until after the Defendants filed their own.

24.     Additionally, the Defendants spent extensive attorney time analyzing the financial aspects of the estate and claims and prepared not only a substantial monetary offer but an offer that proposed in detail which claims by the Defendants and other Claimants, in which categories, be paid how much.  In other words, it would have been much easier for them to simply propose that they receive a number of dollars and leave it to the Trustee and his counsel to determine how to get that amount to them given the Liquidating Plan's numerous claim categories and given the different types and amounts of claims (senior secured, unsecured, etc.).  Nevertheless, in order to make the Mediation more productive, counsel for the Defendants spent the time to develop an overall proposal for each category of claims to determine how to get the proposed amounts to the

---

[26]       The Mediator instructed that the parties should provide him and each other a "statement of position" in order for him "to properly prepare for your case".  See copy of November 19, 2010 letter, attached hereto as Exhibit 8.  He gave the parties the option of providing him with an additional confidential issue paper.  Id.  The Trustee's attorneys refused to provide the former and gave the Mediator only the latter.  See copy of December 7, 2010 email from Mr. Ray, attached hereto as Exhibit 9.

Defendants and the other claimants.  In other words, the Defendants' spent the time to not only say the simple fact of "how much," but to also begin unraveling the puzzle for themselves, the Trustee and the other claimants to answer the question of "How?"  Had the parties had meaningful dialogue at the Mediation, Defendants' work on that proposal could have had significant benefit and efficiencies for all parties.

25.     At the Mediation, however, the Trustee refused to negotiate and simply parroted his demands as initially set forth in his complaint and the letter sent to the Defendants on September 23.  That letter outlined the Trustee's so-called "very specific settlement track,"[27] as Mr. Mathie characterized it for the Court at the October 18 Conference.  The proposal merely required Defendants to "assume responsibility for resolving and paying in full any and [sic] allowed claims of the FLI plaintiffs and any other former shareholders."[28]  Additionally, the Trustee's settlement position long before the Mediation was that the Defendants must pay all creditors in full, and the Trustee did not waver from this position at the Mediation.

26.     Ironically, the Trustee sent *five* attorneys to the Mediation—at least one of which traveled to Houston from Dallas.  This was a gross, unnecessary expense considering the lack of settlement efforts expended by those individuals.  McKool Smith should not be allowed to take advantage of the estate and paid a windfall for sending a clearly excessive number of attorneys to a Mediation in which it had no intention of participating.

27.     The refusal to retreat from a 100% demand can hardly be said to be good faith participation in a mediation.  This is especially true after the Trustee's counsel misled the Court and the Defendants into thinking that they were serious about settlement and mediation.  The Trustee's and his counsel's position violates the Fifth Circuit standards set out in cases such as

---

[27]     Rule 9011 Hearing Transcript at 18, *See* Exhibit 3.

[28]     Rule 9011 Hearing Transcript at 30.  This portion of the letter was read into the record.  *See* Exhibit 3.

*Guillory* and *Reynolds*. They did not consider settlement a realistic possibility, they offered no compromise or contribution at all, they did not adjust their position to reflect consideration of any litigation risk at all, and they did not advise the Court and the parties that the Mediation would be pointless. As a result, the Defendants entered the Mediation prepared for a serious back-and-forth settlement dialogue with the Trustee which ultimately did not occur. The Trustee and his counsel had an obligation to inform the Parties that the Mediation would be pointless. Had the Defendants or the Court known that the Trustee would simply reiterate its pay-in-full position, the Mediation could have been postponed or cancelled to avoid the significant waste of the parties' and the Court's resources. The Trustee failed to do so, however, and that failure led to a pointless and wasteful Mediation.

28.     On the evening of the Mediation on December 14, the Defendants pressed the Mediator to get an answer from the Trustee and his counsel to the question of whether, if the parties returned for the second scheduled day of Mediation, a settlement proposal would be forthcoming from the Trustee and his counsel that was different from the demand they had been imposing since September. The Trustee and his counsel responded, NO.

29.     The Trustee's activities in the Mediation were akin to those in cases like *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1334 n.13 (5th Cir. 1996), and *In re A.T. Reynolds & Sons, Inc.*, 424 B.R. 76, 78 (Bankr. S.D.N.Y. 2010), discussed above. Simply being physically present at a mediation does not constitute participation in good faith. The evidence clearly shows that the Trustee had no intention of participating in settlement negotiations and did not participate in the Mediation in good faith. The Trustee should have informed the Court and the other parties that it was not willing to depart from its 100% demand. As a result of this behavior, the resources of the parties, the mediator, and the Court were wasted. Therefore, the Trustee (Grant

Thornton) and his counsel (McKool Smith) should be compelled to reimburse the Defendants' attorneys' fees and expenses associated with preparing for, and attending, the Mediation.

30.     The Defendants note that the reimbursement should be made by the two firms involved (McKool Smith and Grant Thornton) and not by the Trust.  Even the Trustee and his counsel agree that after all claims are paid for every claimant other than the Defendants (even assuming, *arguendo*, that they are paid in full), funds will remain in the Trust for the Defendants. Therefore, if the Trust itself is required to reimburse the Defendants' fees and costs, this will be no sanction at all—the Defendants will be paying themselves because it will be coming from the funds that ultimately will be theirs in any event.[29]  Additionally, the sanction should not be paid by the Trust because the client should not be required to pay for its Trustee's and counsel's behavior.

**The September 23, 2010 Letter**

31.     In addition to the Trustee's and counsel's bad faith approach to the Mediation, his counsel also attempted to improperly use the bait of the Mediation and possible settlement as leverage against Defendants' Rule 9011 Motion.  During the hearing on the Rule 9011 Motion, both Mr. Ray and Mr. Mathie stated that the Trustee had in fact submitted a settlement offer to the Defendants in the form of two letters dated September 21 and 23, 2010, and that this offer had been met with no response.[30]  Those letters contained a demand for the Defendants to withdraw their Rule 9011 Motion or else settlement negotiations would not proceed.  The relevant portion of the September 21 letter stated:

---

[29]     After this Motion is granted, the Defendants can submit affidavit evidence with copies of fee bills and receipts to establish the amount of fees and costs that are appropriately reimbursed.

[30]     Rule 9011 Hearing Transcript at 18, 22, 26, *See* Exhibit 3.

> Although the Trustee will comply with its court ordered obligations, we believe Defendants' Rule 11 motion is both frivolous and it makes meaningful settlement discussions impossible.   Our view will not change until either:   One, you withdraw defendants' rules motion [sic]; or Two, the Court resolves the Motion.[31]

32.     When the Court confronted the Trustee's counsel about the letters, he made no objections and admitted to sending them.[32]   In response, the Court admonished the Trustee's counsel for linking counsel's personal defense of the Rule 11 Motion with his representation of his client and negotiating in good faith.  The Court stated:

> Don't do that.  You don't have the right to do that.  That Rule 11 is against your firm and you've got to put that aside and you've got to represent your client the best you can notwithstanding the Rule 11.  So let's not let that get in the way of anything.[33]

Mr. Mathie repeated, "[W]hat I said [to Defendants] was that we didn't think that any meaningful discussion could take place with the Rule 11 motion in the way."  The Court insisted, "Well, I don't see why. …"  Mr. Mathie then agreed, "I understand your point Your Honor, and we will comply with your order."[34]

33.     The Court was correct to admonish the Trustee's counsel for making such a demand.  This action constitutes a flagrant violation of Texas Rule of Professional Conduct 1.06(b)(2), which prohibits an attorney from representing a client when an attorney or his firm is "adversely limited … by the lawyer's or law firm's own interests[,]" and the client has not consented to the conflict.  TEX. R. PROF. CONDUCT 1.06(b)(2), (c).  *See also* ABA MODEL R. PROF. CONDUCT 1.7 and 11 U.S.C. § 327(a).  Conflicts of interest are not countenanced in Bankruptcy.  *See*, *e.g.*, *In re Kendavis Industries Int'l, Inc.*, 91 B.R. 742 (Bankr. N.D.Tex. 1988).

---

[31]     Rule 9011 Hearing Transcript at 29-30, *See* Exhibit 3.

[32]     Rule 9011 Hearing Transcript at 19, *See* Exhibit 3.

[33]     Rule 9011 Hearing Transcript at 19 (emphasis supplied), *See* Exhibit 3.

[34]     Rule 9011 Hearing Transcript at 19, *See* Exhibit 3.

If such a conflict exists, disqualification is proper.  *See In re Humble Place Joint Venture*, 936 F.2d 814 (5th Cir. 1991); *In re Am. Airlines, Inc.*, 972 F.2d 605, 611 (5th Cir. 1992).  Denial or reduction of fees is also warranted.  *See In re Consol. Bancshares, Inc.,* 785 F.2d 1249, 1256 n.7 (5th Cir. 1986); *In re MFlex Corp.*, 172 B.R. 854, 860 (Bankr. W.D. Tex. 1994); 11 U.S.C. § 328(c).

34.     Here, the Trustee's attorneys put the interest of their firm squarely before those of the Trustee or the Trust.  This behavior inhibited settlement discussions to the detriment of the Trust and the claimants.   As a result of this behavior, the Trustee's attorneys should be sanctioned and disqualified from continuing to represent the Trustee.

35.     The Court gave counsel a second chance and did not immediately order them withdrawn from the case.   When counsel admitted to attempting to condition settlement discussions on dismissal of the Rule 11 Motion against them, the Court adamantly instructed them:  "Don't do that. … Put that aside and represent your client. … Let's not let that get in the way of anything."[35]  However, at the Mediation, counsel showed up taking the same position on settlement—the absolute, uncompromising position that the Defendants must pay all other claims in full and assume responsibility to deal with FLI.

36.     Federal Rule of Civil Procedure 16(f) gives courts broad discretion to craft appropriate sanctions in order to enforce violations of the settlement process, and the Fifth Circuit has made it clear that district courts are to have available "the most severe sanction[s] … to both penalize the offending party and deter those who are tempted by such conduct."  *Lydic v. Bayer A.G.*, 219 F.R.D. 114, 115 (S.D. Tex. 2003) (*citing F.D.I.C. v. Conner*, 20 F.3d 1376, 1383 (5th Cir.1994)).  Therefore, the Court has the authority to create an appropriate sanction

---

[35]      Rule 9011 Hearing Transcript at 19, *See* Exhibit 3.

against the Trustee and his attorneys for their recalcitrant and unethical approach to settling the instant matter.  That sanction can and should include disqualification of the Trustee's attorneys for violating the rules of ethics by demanding that the Defendants withdraw their well-substantiated Rule 9011 Motion.[36]  Additionally, Trustee's counsel should be disqualified as a result of their conflict of interest under Texas Rule of Professional Conduct 1.06(b)(2), ABA Model Rule of Professional Conduct 1.7, and 11 U.S.C. § 327(a).

## Conclusion

37.     Based on the foregoing, the Trustee and his attorneys should be sanctioned for their conduct with regard to the Mediation and settlement negotiations in general.  Their behavior before and during the Mediation shows they were not serious about settlement and that they did not participate in the Mediation in good faith.  After they misled the Court and the parties about their desire to mediate and to globally settle the case, they appeared at the Mediation and continually reiterated their pay-in-full settlement position set forth in the complaint and the September 23, 2010 letter.

38.     The Trustee's counsel also inappropriately linked the Defendants' Rule 9011 Motion to the negotiating process, thereby violating Texas Rule of Professional Conduct 1.06(b)(2), ABA Model Rule of Professional Conduct 1.7, and 11 U.S.C. § 327(a).  This pattern of behavior proves that they never intended to settle this matter, at the Mediation or otherwise, and they should be sanctioned accordingly.  At a minimum, the Court should require the Trustee and counsel to pay all fees and costs of the Defendants associated with the Mediation.  Additionally, the Trustee's attorneys should be disqualified and/or monetarily sanctioned for

---

[36]     Even the Court noted that the allegations contained in the Rule 9011 Motion were colorable, and could even be expected, in light of the Special Litigation Report.  *See* Rule 9011 Hearing Transcript at 20, *See* Exhibit 3.

placing the interests of their firm ahead of the interests of their client, the Trustee.  *See* 11 U.S.C. §§ 327(a), 328.

Dated:  January 12, 2011

**Respectfully submitted:**

THOMAS S. HENDERSON, Attorney at Law

   /s/ *Thomas S. Henderson*
THOMAS S. HENDERSON (TBA No. 09432300)

South Tower, Pennzoil Place
711 Louisiana, Suite 3100
Houston, Texas 77002-2716
Telephone:     (713) 227-9500
Facsimile:      (713) 620-3023

BALDWIN HASPEL BURKE & MAYER, LLC

   /s/ *Thomas J. Cortazzo*
KARL J. ZIMMERMANN (LA. Bar No. 14481)
THOMAS J. CORTAZZO (LA. Bar No. 18174)
JENA W. SMITH (LA. Bar No. 25255)
BRODIE G. GLENN (LA. Bar No. 33152)

Energy Centre - 22nd Floor
1100 Poydras Street, Suite 2200
New Orleans, Louisiana  70163
Telephone:     (504) 569-2900
Facsimile:      (504) 569-2099

WINTHROP & WEINSTINE

   /s/ *Robert R. Weinstine*
ROBERT R. WEINSTINE (Bar No. 115435)
JOSEPH WINDLER (Bar No. 387758)

Capella Tower | Suite 3500
225 South Sixth Street
Minneapolis, Minnesota 55402-4629
Telephone:     (612) 604-6400
Facsimile:      (612) 604-6800

COUNSEL FOR THE DEFENDANTS

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing pleading has been served on the parties to this

adversary proceeding by ECF filing on the 12th day of January, 2011.


___/s/ *Thomas S. Henderson*_____